674 So.2d 45 (1995)
Willie Mae PRYOR
v.
BROWN & ROOT USA, INC.
1940431.
Supreme Court of Alabama.
September 15, 1995.
Application for Rehearing Overruled February 2, 1996.
Dissenting Opinion on Overruling of Application for Rehearing February 2, 1996.
*46 Tony S. Hebson, Birmingham, for Appellant.
J. Glynn Tubb and Jenny L. McLeroy of Eyster, Key, Tubb, Weaver & Roth, Decatur, for Appellee.
Dissenting Opinion on Overruling of Application for Rehearing by Chief Justice Hooper February 2, 1996.
HORNSBY, Chief Justice.
On July 18, 1993, Jeff Dealy, an employee of Brown & Root USA, Inc., had an automobile accident that also involved Willie Mae Pryor. Dealy was driving a vehicle owned by Brown & Root when the accident occurred. Pryor alleged negligence and wantonness against Dealy and Brown & Root, and she alleged negligent entrustment against Brown & Root.
The trial court entered a summary judgment in favor of Brown & Root on all counts. Pryor appeals. This appeal deals solely with the issue of Brown & Root's liability, and not with Dealy's liability. The sole question presented is whether Pryor met her requisite burdens of proof regarding the issues of respondeat superior liability and negligent entrustment, so as to warrant submitting those issues to the jury.

Factual Background
Jeff Dealy was employed by Brown & Root, a construction company, as a project engineer at the Champion Paper Plant in Courtland, Alabama. Dealy was scheduled to work Monday through Thursday from 6:00 a.m. until 4:30 p.m. and had the option of *47 working on Friday, Saturday, or Sunday. Dealy testified that he was subject to being called in to work by his supervisor on those days. Dealy further testified that if he "was in town" on Friday, Saturday, or Sunday, then he was "on the job." On the day of the accident, Sunday, July 18, 1993, Dealy opted to work from 10:00 a.m. until noon at the Champion Plant. At noon, he left work in his company-supplied vehicle and went to Lucy's Branch, west of Athens off Highway 72. Dealy went to Lucy's Branch to meet friends in order to go sailing on Lake Wheeler. Dealy left Lucy's Branch at 5:30 p.m. to return to his home in Decatur. Dealy admitted to drinking four 12-ounce beers while he was at Lucy's Branch. On his way home from Lucy's Branch, Dealy ran a red light at an intersection in Athens, and his vehicle hit Pryor's vehicle, injuring Pryor. He was given a sobriety test on the scene of the accident and was found not to be intoxicated. Had Dealy gone straight home from the Champion Plant, he would have reached his home in Decatur by around 1:00 p.m., without passing through Athens.
Pryor's claims against Brown & Root are grounded in the law of agency, respondeat superior, and negligent entrustment. Pryor appeals from a summary judgment for Brown & Root on all counts. "In reviewing the disposition of a motion for summary judgment, we utilize the same standard as the trial court in determining whether the evidence before [it] made out a genuine issue of material fact" and whether the movant was "entitled to a judgment as a matter of law." Bussey v. John Deere Co., 531 So.2d 860, 862 (Ala.1988) (citing Chiniche v. Smith, 374 So.2d 872 (Ala.1979)); Rule 56(c), A.R.Civ.P. The movant has the burden of "showing material facts, which, if uncontested, entitle the movant to judgment as a matter of law." Berner v. Caldwell, 543 So.2d 686, 688 (Ala.1989); Woodham v. Nationwide Life Ins. Co., 349 So.2d 1110, 1111 (Ala.1977). Once the movant has made this showing, the opposing party then has the burden of presenting evidence creating a genuine issue of material fact. Danford v. Arnold, 582 So.2d 545, 546 (Ala.1991); Bass v. SouthTrust Bank of Baldwin County, 538 So.2d 794, 797-98 (Ala.1989).
The nonmovant must meet the burden of establishing by substantial evidence the existence of a genuine issue of material fact. Ala.Code 1975, § 12-21-12; Bass v. SouthTrust Bank of Baldwin County, supra. "Substantial evidence" is "evidence of such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved." West v. Founders Life Assurance Co. of Florida, 547 So.2d 870, 871 (Ala.1989).
Our review is further subject to the caveat that this Court must review the record in a light most favorable to the nonmovant and must resolve all reasonable doubts against the movant. Hanners v. Balfour Guthrie, Inc., 564 So.2d 412, 413 (Ala.1990).

Agency/Respondeat Superior
Pryor argues that Dealy was acting as an agent of Brown & Root at the time of the accident and that Brown & Root is thus liable for his actions. The agency issue centers upon the fact that Dealy was driving a Brown & Root vehicle when he hit Pryor and had been working for Brown & Root on the morning of the accident.
In response, Brown & Root argues that Dealy was not acting as its agent at the time of the accident. Brown & Root argues that the principle of respondeat superior and not the law of agency governs this case. In Southern Life & Health Ins. Co. v. Turner, 571 So.2d 1015, 1018 (Ala.1990), judgment vacated, Southern Life & Health Ins. Co. v. Turner, 500 U.S. 901, 111 S.Ct. 1678, 114 L.Ed.2d 73 (1991), affirmed on remand, Southern Life & Health Ins. Co. v. Turner, 586 So.2d 854 (Ala.1991), this Court stated "that the relationship between agency and respondeat superior is often confused" because the "distinction between the law of agency and the law of respondeat superior is subtle." This Court, quoting 3 Am.Jur.2d Agency § 280 at 783 (1986), held:
"`The general rule that a principal is liable for the torts of his agent is not grounded on agency principles. This is evident from the holdings that a principal may be held *48 [liable] for his agent's tort committed in the course and scope of the agent's employment even though the principal does not authorize, ratify, participate in, or know of, such misconduct, or even if he forbade or disapproved of the act complained of. Fundamentally, there is no distinction to be drawn between the liability of a principal for the tortious act of his agent and the liability of an employer or master for the tortious act of his employee or servant. In both cases, the tort liability is based on the employer and employee, rather than any agency, principle; the liability for the tortious act of the employee is grounded upon the maxim of `respondeat superior' and is to be determined by considering, from a factual standpoint, the question whether the tortious act was done while the employee, whether agent or servant, was acting within the scope of his employment.'"
571 So.2d at 1018.
In Autrey v. Blue Cross & Blue Shield of Alabama, 481 So.2d 345 (Ala.1985), this Court stated:
"`"The liability of a corporation for the torts of its employees, whether agent or servant, is grounded upon the principle of `respondeat superior,' not the principles of agency. The factual question to be determined is whether or not the act complained of was done, either by agent or servant, while acting within the line and scope of his employment. The corporation or principal may be liable in tort for the acts of its servants or agents done within the scope of employment, real or apparent, even though it did not authorize or ratify such acts or even expressly forbade them."' (Citations omitted.)"
481 So.2d at 347-48, quoting National States Ins. Co. v. Jones, 393 So.2d 1361, 1367 (Ala. 1980) (quoting in turn from Old Southern Life Ins. Co. v. McConnell, 52 Ala.App. 589, 594, 296 So.2d 183, 186 (1974)).
In the instant case, the trial court properly held that the principle of respondeat superior was applicable. This Court has held: "To recover for damages for injuries sustained in an automobile accident against the driver's employer upon a theory of respondeat superior, it is incumbent upon plaintiff to prove that the collision occurred while the driver was within the scope of his employment, and happened while he was in the accomplishment of objectives within the line of his duties." Perdue v. Mitchell, 373 So.2d 650, 653 (Ala.1979), citing Cook v. Fullbright, 349 So.2d 23 (Ala.1977).
Because Pryor's claims against Brown & Root are based on the doctrine of respondeat superior, the burden is on Pryor to present substantial evidence that the collision occurred while Dealy was acting within the line and scope of his employment. Williams v. Hughes Moving & Storage Co., 578 So.2d 1281, 1283 (Ala.1991). In this case, Dealy left work and went out of his way home to go sailing with friends. At the time of the accident, he was returning home. Even Pryor concedes that "the evidence without question seems to indicate that Mr. Dealy was on his own personal business" at the time of the wreck. However, Pryor contends that, because Dealy was driving a Brown & Root vehicle, the fact that Dealy was on personal business is not sufficient to sever Brown & Root's liability.
Use of a vehicle owned by an employer creates an "administrative presumption" of agency and a presumption that the employee was acting within the scope of his employment, as that concept is used in the law of respondeat superior liability, but this "administrative presumption" is not in itself evidence. Durbin v. B.W. Capps & Son, Inc., 522 So.2d 766, 766 (Ala.1988); Rogers v. Hughes, 252 Ala. 72, 75, 39 So.2d 578, 579 (1949); Tullis v. Blue, 216 Ala. 577, 114 So. 185 (1927). In Durbin, the Court stated:
"`It is well settled that those presumptions do arise from proof of the defendant's ownership of the vehicle; but it is well settled also that they are prima facie presumptions merely, or, as they are sometimes called, administrative presumptions, based upon considerations of fairness and convenience in placing the burden of proof. They are not in themselves evidence, and in practice their effect is merely to impose upon the defendant the burden of showing that the driver was not his agent, or that, *49 if he was, he was not acting within the scope of his authority or in the course of his employment. If the evidence thereon is in conflict, or leads to doubtful inference only, the issue should go to the jury. If, however, the evidence, without dispute, rebuts the facts thus presumed, there is no issue for the jury, and the general affirmative charge should be given for the defendant on request.'"
522 So.2d at 767, quoting Tullis v. Blue, 216 Ala. at 578, 114 So. at 187. (Citations omitted.) See also Williams v. Hughes Moving & Storage Co., supra.
The Durbin Court further stated:
"`When plaintiff proves such ownership of the [vehicle] by defendant, and thereby brings into being the presumption [that the driver was his agent], he need not offer further proof that the operator of the [vehicle] was the agent of defendant, and [was acting] in the line and scope of his authority, until and unless defendant has offered proof that he was not acting for defendant in the line and scope of his authority. And if defendant makes that proof and it is not contradicted, either expressly or inferentially, defendant is entitled to the affirmative charge. But if there is any evidence which reflects upon the credibility of that evidence by defendant on that question, or from which an inference may be drawn to a different result, whether such evidence was produced by defendant or plaintiff, the question of whether the operator of the [vehicle] was defendant's agent acting in the line and scope of his authority should be submitted to the jury.'"
522 So.2d at 767, quoting Craft v. Koonce, 237 Ala. 552, 554, 187 So. 730, 731 (1939).
Brown & Root maintains that its evidence that Dealy "was not acting within the scope of his authority or in the course of his employment" was sufficient to rebut the presumption created by Dealy's use of the Brown & Root vehicle. The trial court held that Brown & Root could not be held liable for Dealy's actions because, the court determined, the evidence showed that he was not acting within the line and scope of his employment when he deviated from his normal route home in order to go sailing with friends. The trial court stated:
"[Dealy] had clearly abandoned the business of furthering the interest of Brown & Root. Sunday was not a normal work day for him, and he had clearly abandoned any attempts to further the interest of the employer. The mere fact that he was driving a truck owned by the employer is not sufficient to base a finding of liability upon in the absence of other facts. No other facts are presented which could support a finding of liability by Brown & Root."
However, the record reveals additional evidence bearing on the issue of whether Dealy was acting in the line and scope of his authority. Brown & Root's policy was to allow its employees "nominal personal use" of the company-issued vehicles.[1] However, nowhere in the company policy did Brown & Root define what constitutes "nominal personal use." Nevertheless, Brown & Root argues that Dealy's use of the truck on the day of the accident was a departure from the allowable "nominal personal use" and thus prevents any liability to Pryor. Pryor argues that the question whether Dealy's use of the vehicle on July 18, 1993, was "nominal" is one for the jury to determine.
Pryor submitted evidence that Dealy's supervisor knew that Dealy had access to no other vehicle and was using the company vehicle for personal use and that Dealy's supervisor also used his own vehicle for personal use. Dealy had used the company truck as his exclusive vehicle since January 1991i.e., for 30 months before the accident. Dealy testified that he knew that company policy provided that he was to use the vehicle only for travel to and from work and on the job, but that he used it for everything, including pleasure trips, and that his supervisor was fully aware of this. Dealy said that even though his superiors knew he was using the vehicle for pleasure, they never reprimanded him for that use. Moreover, even *50 after the accident, Brown & Root did not, for income tax purposes, treat the value of Dealy's personal use of the vehicle as part of Dealy's compensation.
This case is similar to Williams v. Hughes Moving & Storage Co., supra. In Williams, a company vehicle was involved in an accident, and the injured party sued the owner of the vehicle and the employee in possession of the vehicle. The company policy was for company vehicles to be returned to the office after each day's work. The employee, however, had driven a truck home on several occasions. He did this even though his employer required that "trucks be returned even if the parking lot was locked, in which case the truck was to be left outside the lot and a security guard would bring the truck into the lot later"; the company "policy toward employees who took company vehicles home without specific authorization was to terminate and prosecute them." 578 So.2d at 1282. The employee apparently never faced discipline in any manner for taking company trucks home, just as Dealy never faced any discipline for his exclusive personal use of the Brown & Root vehicle, even though Brown & Root was fully aware of this use.
The trial court in Williams granted the company's motion for a directed verdict. The employer argued that because the employee took the vehicle home with him, in direct violation of company policy, he could not be considered to have been acting in the line and scope of his employment. This Court disagreed and reversed, holding that "[t]he mere fact that [the employee] was acting against company policy is not ... conclusive as to the question of [the employee's] status at the time of the accident." 578 So.2d at 1283. See also Lawler Mobile Homes, Inc. v. Tarver, 492 So.2d 297 (Ala. 1986) (holding a jury question existed as to whether the employee was acting from personal motives or in the line and scope of his employment); Solmica of the Gulf Coast, Inc. v. Braggs, 285 Ala. 396, 232 So.2d 638 (1970) (holding that an employer could be held liable for the unauthorized acts of the employee).
As in this case, the employer's ownership of the vehicle in Williams was undisputed. Therefore, it was Brown & Root's burden to rebut the presumption that Dealy was acting within the line and scope of his employment. "In order for [the employer] to rebut the presumption and prevent submission of [the plaintiff's] claims to a jury, its evidence must eliminate any question as to whether [the employee] was acting in the scope of his employment by having this truck ... when the accident occurred." 578 So.2d at 1285.
Brown & Root's only evidence that Dealy was not acting in the scope of his employment was the evidence that company policy prohibited employees from using vehicles for anything other than "nominal personal use." Brown & Root argues that Dealy violated this policy by using the truck to meet with friends, and, therefore, he was acting outside the scope of his employment. However, even aside from the fact that the company policy did not define "nominal personal use," the fact that Dealy was using the Brown & Root vehicle as his sole personal vehicle, with the knowledge of and in the same manner as his supervisor, supports an inference that his use of the vehicle was within the line and scope of his employment. Thus, this case is quite similar to Williams; a suggestion that Dealy's use was not authorized "falls far short of rebutting the presumption that [Dealy] was acting within the scope of his employment, because of the fact that [Brown & Root] had not enforced the policy in the past, with respect to [Dealy], but had virtually condoned [Dealy's] practice of using the company vehicle for personal use. 578 So.2d at 1285. Since the accident, Dealy had not used a Brown & Root vehicle as his exclusive mode of transportation. He also has use of another vehicle, but he testified that he still uses the Brown & Root vehicle for pleasure trips.
In addition, Pryor argues that Brown & Root ratified the tortious conduct of Dealy and should thus face liability for his actions. As to ratification, Pryor maintains that Brown & Root received a direct benefit from the accident in question. The record shows that it is Brown & Root's policy to charge repair costs to the client for whom it is working when an accident occurs on the job. In this case, Brown & Root was working for *51 the Champion Paper Company in Courtland. Brown & Root charged Champion Paper Company for the cost to repair the damage to Dealy's vehicle sustained in the July 18, 1993, accident. In addition to the cost of repairs, the cost of the truck and the costs of operating and maintaining the truck were charged by Brown and Root as an expense associated with the Champion Paper project. Although it is arguable that the accident provided no benefit to Brown & Root, these facts further support the inference that Brown & Root acknowledged that Dealy was acting within the line and scope of his employment at the time of the accident.
Pryor maintains that had Brown & Root charged Dealy for the repair costs, or had it simply paid for the repairs itself, then ratification would not have occurred. In contrast, by accepting payment from Champion for the cost of repairs, Pryor argues, Brown & Root accepted a benefit that raises a jury question as to whether Brown & Root ratified Dealy's act. This evidence of ratification further supports Pryor's argument that it is a jury question whether the collision occurred while Dealy was acting within the scope of his employment pursuant to the accomplishment of objectives within the line of his duty. Perdue v. Mitchell, 373 So.2d 650 (Ala.1979).
Given the question whether Brown & Root condoned Dealy's personal use of the vehicle and the question whether it ratified his acts, we conclude that the evidence presents a genuine issue of material fact as to whether Brown & Root is liable under the doctrine of respondeat superior. Thus, as to the claim asserting liability under the doctrine of respondeat superior, the summary judgment is due to be reversed and this case remanded for trial on that claim.

Negligent Entrustment
Pryor also alleges that, because of Dealy's prior driving record, Brown & Root was negligent in entrusting him with a company vehicle. In Stanford v. Wal-Mart Stores, Inc., 600 So.2d 234 (Ala.1992), this Court said:
"`"Negligent Entrustment is defined in Restatement (Second) of Torts § 390, as follows:
"`"`One who supplies directly or through a third person a chattel for the use of another whom the supplier knows or has reason to know to be likely because of his youth, inexperience, or otherwise, to use it in a manner involving unreasonable risk of physical harm to himself and others whom the supplier should expect to share in or be endangered by its use, is subject to liability for physical harm resulting to them.'"'"
600 So.2d at 236-37, quoting Wilbanks v. Brazil, 425 So.2d 1123 (Ala.1983), quoting in turn Brown v. Vanity Fair Mills, Inc., 291 Ala. 80, 82, 277 So.2d 893 (1973).
The elements of a cause of action for negligent entrustment are: "(1) an entrustment; (2) to an incompetent; (3) with knowledge that he [or she] is incompetent; (4) proximate cause; and (5) damages." Mason v. New, 475 So.2d 854, 856 (Ala.1985), citing Chiniche v. Smith, 374 So.2d 872 (Ala.1979). In Mason, this Court held that the "doctrine of negligent entrustment is founded on the primary negligence of the entrustor in supplying a motor vehicle to an incompetent driver, with manifestations of the incompetence of the driver as a basic requirement of a negligent entrustment action." 475 So.2d at 856; citing Chiniche, supra; Cooter v. State Farm Fire & Casualty Co., 344 So.2d 496 (Ala.1977).
The trial court found that Dealy had been charged with DUI in Texas in 1983; that was 10 years before the accident involved in this case. Because he attended an alcohol education class, Dealy was given probation or a "deferred adjudication." The trial court found that in the five years immediately prior to the accident of July 18, 1993, Dealy had received two speeding tickets. Dealy received the first ticket in 1991 in Texas, and he received the second ticket in May 1992, in Hillsboro, Alabama. The trial court further found that there was no record of Dealy's ever having been involved in an accident before July 18, 1993. As a result, the trial court held that Pryor's negligent entrustment claim against Brown & Root was without merit.
*52 We conclude that Dealy's prior driving recordtwo speeding tickets and a suspended prosecution of a DUI charge over a 10-year periodis not sufficient to support a claim of negligent entrustment against Brown & Root. Pryor failed to present substantial evidence that Dealy was an incompetent driver or that Brown & Root had any knowledge that would indicate Dealy was incompetent. Accordingly, Pryor did not overcome Brown & Root's prima facie showing that there was no genuine issue of material fact regarding the negligent entrustment claim; the summary judgment is affirmed as to that claim.
AFFIRMED IN PART; REVERSED IN PART; AND REMANDED.
ALMON, SHORES, KENNEDY, INGRAM, and BUTTS, JJ., concur.
COOK, J., concurs specially.
MADDOX and HOUSTON, JJ., concur in part and dissent in part.
COOK, Justice (concurring specially).
To recover on the theory of respondeat superior, Pryor was required to demonstrate that "the collision occurred while [Dealy] was within the scope of his employment, and happened while he was in the accomplishment of objectives within the line of his duties." Perdue v. Mitchell, 373 So.2d 650, 653 (Ala.1979). In my view, a question of fact is presented as to whether Dealy, who was on a detour of a personal nature, was, nevertheless, acting "within the scope of his employment."
Specifically, Pryor presented evidence that Brown & Root USA, Inc., maintained a policy, or practice, of charging "repair costs to the client for whom it is working when an accident occurs on the job." 674 So.2d at 50 (emphasis added). Brown, by charging the cost of repairing Dealy's vehicle to its client, Champion Paper Company, while, at the same time, disclaiming Dealy's actions, takes inconsistent positions as to those activities. A question of fact is presented, therefore, as to whether Brown, itself, by charging its clients for the repairs to Dealy's vehicle, considered Dealy to be operating "within the scope of his employment" at the time of the accident.
HOUSTON, Justice (concurring in part and dissenting in part).
I concur in that portion of the opinion that affirms the judgment on the negligent entrustment claim, but I believe that Williams v. Hughes Moving & Storage Co., 578 So.2d 1281 (Ala.1991) (Maddox and Steagall, JJ., dissenting) (a case in which I did not participate), was wrongly decided. I believe that the fact that an employee is acting against his employer's company policy at the time of an accident is conclusive evidence that the employee was not acting in the line and scope of his employment at the time of the accident. This case may involve a factual issue of whether Dealy's action in driving his employer's truck at the time of the accident was permitted under the provision allowing "nominal personal use," a use that company policy permitted but did not define. However, even if a jury could find that Dealy's use of the vehicle at the time of the accident was permissible personal use (The policy provided that "The employee may not use the vehicle for personal purposes other than commuting and nominal personal use." (Emphasis added.)), this finding would in no way make such personal use a use within the line and scope of Dealy's employment by Brown & Root.
MADDOX, J., concurs.

On Application for Rehearing
PER CURIAM.
APPLICATION OVERRULED.
SHORES, KENNEDY, INGRAM, COOK, and BUTTS, JJ., concur.
HOOPER, C.J., and MADDOX and HOUSTON, JJ., dissent.
HOOPER, Chief Justice (dissenting).
I was not a member of this Court when it originally voted on this case. I would grant the application for rehearing. I think the majority has erred in reversing the defendant's summary judgment, and I think this Court should reconsider its opinion.
On a claim of respondeat superior liability, the plaintiff has the burden of presenting *53 substantial evidence indicating that the employee's action alleged as a basis for imposing liability occurred while the employee was acting within the line and scope of his or her employment. Williams v. Hughes Moving & Storage Co., 578 So.2d 1281, 1283 (Ala.1991). The argument that Dealy was acting within the scope of his employment is two-fold: First, the plaintiff argues that an employee's use of a vehicle owned by his or her employer creates an "administrative presumption" that the employee was acting within the scope of the employment. Second, the plaintiff argues that Brown & Root had an undefined policy of allowing its employees "nominal personal" use of its automobile and, therefore, that by acquiescence Brown & Root ratified Dealy's actions taken while he was driving a Brown & Root vehicle.
This Court has written the following regarding administrative presumptions:
"`[Such presumptions] are not in themselves evidence, and in practice their effect is merely to impose upon the defendant the burden of showing that the driver was not his agent, or that, if he was, he was not acting within the scope of his authority or in the course of his employment. If the evidence thereon is in conflict, or leads to doubtful inference only, the issue should go to the jury. If, however, the evidence, without dispute, rebuts the facts thus presumed, there is no issue for the jury, and the general affirmative charge should be given for the defendant on request.'"
Durbin v. B.W. Capps & Son, Inc., 522 So.2d 766, 767 (Ala.1988), quoting Tullis v. Blue, 216 Ala. at 578, 114 So. at 187 (1927). (Citations omitted; emphasis omitted.)
The administrative presumption merely shifts to Brown & Root the burden of proving that Dealy was not acting within the scope of his employment when the accident occurred. The record clearly shows that he was not. Dealy had left work and, instead of going home, went sailing and drinking with friends. Five and a half hours after he had left work and when he was finally on his way home, Dealy was involved in this accident. It occurred at a point Dealy would not have passed if he had gone straight home from work. Even the plaintiff concedes that "the evidence without question seems to indicate that Mr. Dealy was on his own personal business" at the time of the wreck. Clearly Brown & Root met its burden; clearly, Dealy was not acting in the line and scope of his employment at the time of the accident.
Once the defendant has rebutted the administrative presumption, the burden then shifts back to the plaintiff to prove a prima facie case. The majority opinion takes as the plaintiff's proof meeting that burden Brown & Root's policy of allowing its employees "nominal personal use" of company-issued vehicles. The Brown & Root policy stated: "The employee may not use the vehicle for personal purposes other than commuting and nominal personal use." Pryor submitted evidence that Dealy had a pattern of using the vehicle for personal use and that his supervisor was aware of this personal use. The majority cites Williams v. Hughes Moving & Storage Co., 578 So.2d 1281 (Ala.1991). In Williams, this Court held that "[t]he mere fact that [the employee] was acting against company policy is not ... conclusive as to the question of [the employee's] status at the time of the accident." 578 So.2d at 1283. Williams involved an employee who was involved in a motor vehicle accident while using his employer's truck. The employer's only defense was that the employee had violated the company's policy regarding use of the truck. This Court held that the employee's violation of that policy alone was not conclusive proof that the employee was acting outside the scope of his employment. Therefore, under Williams, Brown & Root must offer additional evidence to rebut the presumption that the employee was acting within the scope of his employment.
Brown & Root offered abundant additional evidence to rebut that presumption. Its evidence showed that Dealy had left work and was not going to return to work; that he went out of his way to go sailing and drinking with friends; and that five and a half hours after he had left work, he had an accident. To conclude that there is some reasonable possibility that Dealy was acting in the line and scope of his employment is an unwarranted stretch of reasoning. It is also an unwarranted expansion of potential liability *54 for employers. The majority opinion incorrectly asserts that the only evidence that "Dealy was not acting in the scope of his employment was the evidence that company policy prohibited employees from using vehicles for anything other than `nominal personal use.'" 674 So.2d at 47.
In Williams, this Court stated: "In order for [the employer] to rebut the presumption and prevent submission of [the plaintiff's] claims to a jury, its evidence must eliminate any question as to whether [the employee] was acting in the scope of his employment by having this truck at his home when the accident occurred." 578 So.2d at 1285. The evidence offered by Brown & Root clearly eliminates any reasonable question as to whether Dealy was acting within the scope of his employment.
The evidence indicates that, beyond any reasonable doubt, that Dealy was not acting in the line and scope of his employment; thus this Court has no sound reason for reversing the defendant's summary judgment. This case was not about whether to follow the standard set out in Williams. The Williams standard, applied correctly, would result in a judgment for Brown & Root. The majority has improperly applied the Williams standard, ignoring all the evidence Brown & Root offered other than the fact that Dealy had violated company policy as to the use of the truck.
Brown & Root denies that it charged the cost of repairing the damaged vehicle to Champion Paper Company, Brown & Root's customer. The majority opinion says that Brown & Root did charge that cost to its customer. Nothing in the record supports the assertion that Brown & Root did so. The record indicates only that Brown & Root charged Champion $500 every month for the cost of regular maintenance for the use of this particular vehicle on the project Brown & Root was working on for Champion. Even if Brown & Root had charged Champion for the repair of the damage that resulted from the accident, how would its doing so benefit Brown & Root? Brown & Root's charging Champion, if it did so, would merely have restored Brown & Root's vehicle to the condition it was in before the accident. If there was any benefit to anyone, it was to the employee, Dealy, who because of that action might be relieved of having to pay for the damage out of his own pocket. If Brown & Root wrongfully took advantage of Champion, then that is a matter for Champion and Brown & Root to deal with. Brown & Root's charging Champion for the repairif it did charge Championwould not have been a ratification of Dealy's tort by Brown & Root.
I would grant the application for rehearing and reconsider the issue of Brown & Root's respondeat superior liability.
NOTES
[1] The policy stated, "The employee may not use the vehicle for personal purposes other than commuting and nominal personal use."