The plaintiffs Frances I. Steadman and Ronald B. Steadman petitioned for a writ of certiorari to the Court of Civil Appeals, which, on June 16, 2000, had affirmed the trial court's summary judgment in favor of the defendants, Central Alabama Title Company, Inc. ("CATCO"), and Jerry Parker. Steadman v. Central Alabama Title Co., (No. 2990446)795 So.2d 854 (Ala.Civ.App. 2000) (table). We granted certiorari review; we reverse and remand.
 I.
In 1994, the Steadmans contacted mortgage broker Phillip Walden, of Capstone Mortgage, about refinancing their home. The Steadmans explained to Walden that they wanted to refinance their home so that they could have the money they needed to pay off Internal Revenue Service ("IRS") tax liens on their property. The Steadmans did not know how much they owed, so no specific amount was set for the loan.
According to the Steadmans, Walden agreed to retain Jerry Parker, the owner of CATCO, to do a title search on the Steadmans' property to determine the amount of the IRS tax liens encumbering the property and, thus, the amount needed *Page 292 
for the loan. The Steadmans paid for the title search, but they never spoke with anyone from CATCO. CATCO was also hired by the lender, Quality Mortgage, USA ("Quality Mortgage"), to perform the closing of the loan to the Steadmans. Before he performed the title search, Parker was provided with the information needed to search for all tax liens filed against the Steadmans' property, and he was told that there were unknown tax liens against the property. During his search, Parker discovered only one tax lien on the property, a lien in the amount of $2,373.01.
Parker served as general agent for United General Title Insurance Company ("United General"), which issued a title commitment that showed only one tax lien against the Steadmans' property. Apparently, however, the amount shown on the title commitment did not represent the actual total of the liens against the property; there was another tax lien, in the amount of $5,763.58, that encumbered the Steadmans' property. The title commitment was sent to Walden, who prepared the loan documents.
Parker received the loan-transaction documents from Quality Mortgage and set the closing date with the Steadmans. The Steadmans, Parker, and Parker's wife were at the closing. The Steadmans allege that during the closing they discussed the IRS tax liens with the Parkers. Mrs. Steadman says she told the Parkers that she thought they owed more to the IRS than the amount represented on the settlement statement. However, Parker told the Steadmans that he had found only the one tax lien, in the amount of $2,373.01, so the Steadmans closed on the loan from Quality Mortgage.
The day after the closing, Mrs. Parker faxed a letter to the IRS tax-lien clerk, requesting a pay-off amount. Four days later, CATCO disbursed all settlement checks to the Steadmans, excluding $2,900 held by CATCO for payment of the $2,373.01 IRS tax lien. Mrs. Parker told the Steadmans that $2,900 was being withheld to ensure that CATCO would have enough to pay off the tax lien. According to the Steadmans, United General issued a title policy that indicated that the liens had been cleared and that the mortgage company was in the "first position."[1]
Subsequently, the IRS notified Mrs. Parker that for "year 1990 requested only" the pay off was $8,339.41. On the same day, CATCO issued a check payable to the Steadmans and the IRS for $2,900. According to the Steadmans, as of that date, "CATCO was not sure that all liens would be cleared, but did not inform anyone of this." The Steadmans took the $2,900 check to the IRS to pay off the tax lien. The IRS informed them that this amount was insufficient to pay off their tax debt.[2]
The Steadmans sued CATCO and Parker, alleging, among other things, that the defendants had breached their contract with the Steadmans to perform a complete title search. The defendants moved for a summary judgment, and the trial court granted their motion. The Steadmans appealed the summary judgment to this Court; we transferred the case to the Court of Civil Appeals, pursuant to § 12-2-7(6), Ala. Code 1975. The Court of Civil Appeals affirmed, without an opinion. *Page 293 
This Court granted the Steadmans' petition for certiorari review.
 II.
This Court reviews a summary judgment by the same standard the trial court uses in determining whether to grant a summary-judgment motion.See Pryor v. Brown Root USA, Inc., 674 So.2d 45, 47 (Ala. 1995). A summary judgment is properly entered if there is no genuine issue of material fact and the movant is entitled to a judgment as a matter of law. See Rule 56(c)(3), Ala.R.Civ.P. The movant has the burden of making a prima facie showing that there is no genuine issue of material fact and that he is entitled to a judgment as a matter of law. See Wal-MartStores, Inc. v. Smitherman, 743 So.2d 442, 444-45 (Ala. 1999). If the moving party makes that prima facie showing, then the burden shifts to the nonmoving party, who then has the burden of presenting substantial evidence creating a genuine issue of material fact, if he is to avoid the entry of a judgment against him. See Pryor, 674 So.2d at 47; see also
Ala. Code 1975, § 12-21-12. In determining whether the evidence creates a genuine issue of material fact, this Court must review the record in the light most favorable to the nonmoving party and must resolve all reasonable doubts against the movant. See Pryor, 674 So.2d at 47. Evidence is "substantial" if it is of "such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved." West v. FoundersLife Assurance Co. of Florida, 547 So.2d 870, 871 (Ala. 1989).
 III.
The Steadmans argue that the Court of Civil Appeals erred in affirming the summary judgment in favor of the defendants on the Steadmans' breach-of-contract claim. Specifically, they contend that there is a genuine issue of material fact as to whether a contract existed between them and the defendants, and whether Parker breached that contract by failing to discover all the tax liens encumbering their property. To establish a breach of contract, the plaintiff must prove: "(1) the existence of a valid contract binding the parties in the action, (2) his own performance under the contract, (3) the defendant's nonperformance, and (4) damages." Southern Med. Health Sys., Inc. v. Vaughn, 669 So.2d 98,99 (Ala. 1995).
The primary issue before this Court is whether there was a valid contract between the Steadmans and the defendants. "The requisite elements of [a contract] include: an offer and an acceptance, consideration, and mutual assent to terms essential to the formation of a contract." Strength v. Alabama Dep't of Fin., Div. of Risk Mgmt.,622 So.2d 1283, 1289 (Ala. 1993); Steiger v. Huntsville City Bd. of Ed.,653 So.2d 975, 978 (Ala. 1995). The defendants do not dispute that the Steadmans paid for the title search conducted by Parker. Thus, there is sufficient evidence of consideration. The Steadmans contend that when Walden hired Parker to conduct the title search, Walden was acting both as their agent and as Capstone Mortgage's agent. Thus, they argue, Walden contracted with the defendants, at least in part, on their behalf. The Steadmans rely on Abstract Title Guaranty Co. v. Kigin, 21 Ala. App. 397,108 So. 626 (1926), where the Court of Appeals held:
 "By a long line of authorities, headed by the case of National Savings Bank of the D.C. v. Ward, 100 U.S. 195, 25 L.Ed. 621, it is held that the liability of an abstracter extends only to the person employing him or to one who is a party or privy to the contract of employment. The nature and scope of the liability assumed by an abstracter is purely contractual, *Page 294 
and must be measured by the nature and terms of the employment. 1 Corpus Juris 368 (11). We do not mean to say or intimate that an abstracter could not, by fraud or collusion with a vendor of real estate, and perhaps in other ways, become liable to a purchaser relying upon an abstract furnished by him."
Kigin, 21 Ala. App. at 399, 108 So.2d at 628 (emphasis added). The issue before us is whether the evidence would support a finding that Walden was acting as an agent of the Steadmans when he contracted with Parker to perform the title search.
In Florence v. Carr, 226 Ala. 654, 148 So. 148 (1933), this Court held:
 "[W]here one desiring a loan [hires a broker] who applies to the lender and consummates the loan, [the broker is] prima facie the agent of the borrower and not of the lender, `and justifies the lender in paying' the latter the amount of the loan . . . if he employs such [broker] to examine the title to the property. . . ."
(Citations omitted.) The party asserting agency has the burden of presenting sufficient evidence to prove its existence. See Mardis v. FordMotor Credit Co., 642 So.2d 701, 704 (Ala. 1994). As previously noted, in determining whether there is a genuine issue of material fact this Court must review the record in the light most favorable to the nonmoving party or parties, in this case the Steadmans. See Pryor, 674 So.2d at 47. The evidence presented by the Steadmans indicates that they hired Walden to procure the loan so that they could pay off the tax liens that encumbered their property. Therefore, Walden hired Parker to conduct a title search on the Steadmans' property, and the Steadmans paid the costs of that search. We conclude that this evidence is sufficient to create a genuine issue of material fact as to whether a valid contract existed between the Steadmans, on the one hand, and Parker and CATCO, on the other.
The Steadmans also argue, in the alternative, that even if we do not find a valid direct contract between the Steadmans and the defendants, the Steadmans are third-party beneficiaries of the contract between the defendants and Walden. They rely on Shine v. Nash Abstract InvestmentCo., 217 Ala. 498, 117 So. 47 (1928). In Shine, Margaret Davis and B.L. Davis (mother and son) owned, separately, two tracts of land. B.L. Davis hired Nash Abstract and Investment Company (referred to in Shine as the "abstracter") to provide the abstract of title. Relying on Nash's abstract, W.E. Shine (the "vendee") purchased both tracts of land. Subsequently, it was discovered that Margaret Davis did not have a valid title to the land she had purported to convey. Shine sued the abstractor. This Court held that, as to the land purportedly conveyed by Margaret Davis, Shine was not in privity of contract with the abstractor because Margaret Davis did not order the contract. However, this Court stated:
 "But we are of opinion that sound reasoning and the weight of modern authority sustain the rule of liability for negligence resulting in injury to the vendee, where the vendor is under duty, or assumes the obligation, to furnish such abstract for the use of the vendee, and the person making the abstract on the vendor's order has knowledge or notice that the abstract is for such use, this on the ground that in such circumstances the engagement of the abstracter by the vendor is a contract made for the benefit of the vendee, and under such engagement the abstracter owes the vendee, who is to use and rely on the abstract, the duty of using reasonable care and skill in examining the records affecting the title and making the abstract." *Page 295 
Shine, 217 Ala. at 500, 117 So. at 48 (emphasis added) (citations omitted). Shine recognizes that an abstractor may be liable to a third-party beneficiary for negligence. See Stacey v. Saunders,437 So.2d 1230 (Ala. 1983).[3]
The evidence presented by the Steadmans indicates that they hired Walden to procure the loan so that they could pay off the tax liens that encumbered their property, and that Walden contracted with Parker for Parker to conduct a title search on the Steadmans' property. Parker apparently knew that the purpose of the title search was to determine the amount of the IRS tax liens encumbering the Steadmans' property and, thus, to determine the amount of the loan needed to refinance the property. We conclude that this evidence is sufficient to create a genuine issue of material fact as to whether the Steadmans are third-party beneficiaries of the contract between the defendants and Walden.
The Steadmans also met their burden of presenting sufficient evidence to create a genuine issue of material fact as to the other elements of their breach-of-contract claim. They performed their part of the contract by paying for the title search. The evidence is sufficient to support their contention that Parker breached the contract by failing to find all the tax liens encumbering the Steadmans' property.[4] The evidence is also sufficient to support a finding that the Steadmans incurred damage.
 "The general rule as to the measure of damages in breach of contract cases is that damages are recoverable which are the natural and proximate consequence of the breach, and it is that sum which would place the injured party in the same condition he would have occupied if the contract had not been breached."
Brendle Fire Equip., Inc. v. Electronic Eng'rs, Inc., 454 So.2d 1032,1034 (Ala.Civ.App. 1984). The damages sought also must have been in the contemplation of the parties when they made the contract. See McLendonPools, Inc. v. Bush, 414 So.2d 92, 93 (Ala. Civ App. 1982). The Steadmans assert that, in relation to the services performed by the defendants, they paid $300 for closing costs and $355 for a title search and title insurance. They further contend that, according to the last information received from the IRS, they have incurred substantial penalties and interest on their back taxes since the breach. Therefore, the Steadmans presented evidence sufficient to create a genuine issue of material fact as to each element of their breach-of-contract claim.
We reverse the judgment of the Court of Civil Appeals affirming the summary judgment in favor of the defendants. We remand the case for the Court of Civil Appeals to order further proceedings consistent with this opinion.
REVERSED AND REMANDED.
Moore, C.J., and Houston, Lyons, Brown, Johnstone, Harwood, Woodall, and Stuart, JJ., concur.
[1] Parker was the local agent of United General.
[2] The Steadmans allege that, pursuant to the IRS's recommendation, they offered to compromise and settle their tax debt. Nearly a year later, after assessing the Steadmans' assets, the IRS informed them that it would not accept their settlement offer.
[3] To recover under a third-party-beneficiary theory, the claimant must show: (1) that the contracting parties intended, at the time the contract was created, to bestow a direct benefit upon a third party; (2) that the claimant was the intended beneficiary of the contract; and (3) that the contract was breached.
[4] "Whatever is necessarily implied in a contract is as much a part [of the contract as] if [it were] expressly stated therein." Broyles v.Brown Eng'g Co., 275 Ala. 35, 37, 151 So.2d 767 (1963). *Page 296