Thomas Halford, as administrator of the estate of Laverne Hill, deceased; Elizabeth June Vines, as administrator of the estate of Glenn Hill, deceased; and William Thomas Currie ("the plaintiffs") appeal from a summary judgment entered by the Marion Circuit Court in favor of Alamo Rent-A-Car, LLC, and Autonation, Inc., formerly known as Republic Industries, Inc., which does business through Alamo (hereinafter Alamo and Autonation are collectively referred to as "the Alamo defendants").[1] We affirm.
 Facts and Procedural History
On January 31, 1999, Mary Helen Williams, along with her niece, Tonya Woods, was driving south along U.S. Highway 43 in Guin, Alabama. She was on her way to Atlanta, where she was to return a car she had rented from the Alamo defendants two days earlier. Williams was driving with the flow of traffic at approximately 50 to 55 miles per hour; the road was wet from a recent rainstorm. For approximately one mile, Williams had unsuccessfully attempted several times to pass two vehicles she was following, returning to her lane each time upon encountering oncoming traffic. Although it is unclear whether Williams was in a passing zone at the time, she made one final attempt to pass the two vehicles in front of her. Moving into the northbound lane of Highway 43, Williams immediately collided head-on with an automobile being driven by Glenn Hill, in which his wife Laverne and his grandson William Thomas Currie were passengers. The collision killed Williams and both Glenn and Laverne Hill and injured Currie and Woods.
Six months before Williams rented the automobile from the Alamo defendants, the Georgia Department of Public Safety had suspended her driver's license. The reason for the suspension was that Williams had failed to appear in traffic court to contest a citation for driving her automobile without displaying a tag. Specifically, as explained in an affidavit submitted to the trial court by Alonzo Johnson:
 "I am the Records Manager for the City of Atlanta Traffic Court. The records kept under my control reflect that [Williams], whose date of birth was January 1, 1950, and whose Georgia driver's license number was __________, received a citation on July 29, 1998 for `no tag, in violation of Code § 40-2-20
of state law — no tag displayed.' The records further reflect that the trial date for this citation was set for September 1, 1998. [Williams] apparently `failed to appear' on the aforementioned date. Subsequently, my records indicate [as evidenced by the attached certified copy of citation 0255994] that [Williams] paid a fine, which included a `failure to appear' penalty, for a total of $150.00 on January 29, 1999."
(Penultimate bracketed statement in original.) Despite the fact that Williams paid the fine and the corresponding "failure to *Page 411 
appear" penalty on January 29, 1999, it is undisputed that when Williams rented the automobile later that day, and even two days later when the collision occurred, her license had not been reinstated but remained suspended.
When Williams arrived on January 29 at Alamo's office located at Hartsfield-Jackson Atlanta International Airport, she presented her facially valid driver's license and her credit card. The driver's license reflected that it was to expire on January 1, 2001. Pursuant to Alamo policy, the rental agent reviewed the license to ensure that Williams's appearance matched the photograph and physical description reflected on the license and determined that the expiration date of the license had not passed, and that the license contained no restrictions or limitations that Alamo deemed unacceptable. Because the review performed by the rental agent did not reveal any reason to refuse to allow Williams to rent the automobile, Alamo entered into a rental agreement with Williams.
On October 12, 1999, the plaintiffs, along with Woods,[2]
sued the Alamo defendants, alleging, among other things, negligent entrustment, and E.B. "Bud" Purser, as administrator of Williams's estate. (In addition, 24 fictitiously named defendants were listed, but no named defendants were ever substituted for any of them.) Purser was eventually dismissed from the action after he and the plaintiffs reached a pro tanto settlement.
On June 4, 2004, the Alamo defendants filed a motion for a summary judgment.[3] On July 13, 2004, the trial court conducted a hearing on the motion. At that hearing, the court inquired of counsel for the plaintiffs as to what evidence existed to indicate that Williams was an incompetent driver, so as to subject the Alamo defendants to liability for negligent entrustment. Counsel replied that Williams's incompetence was indicated by (1) Alamo's policy, which requires a person desiring to rent a vehicle to present a valid driver's license, and (2) the fact that Williams's driver's license had been suspended. The court remarked that "if you do not have any evidence of incompetence on the part of the driver of the automobile, the motion for [a] summary judgment is granted." On July 30, the trial court reduced this order to writing, initially noting that the plaintiffs had presented no evidence indicating that the Alamo defendants had any duty to verify the status of Williams's driver's license. It also noted the absence of any evidence indicating that Williams was an incompetent driver. The trial court concluded:
 "The Plaintiffs have presented no evidence that Williams was young, inexperienced or `otherwise' incompetent. The only evidence presented by the Plaintiffs to establish Williams'[s] incompetence is the fact that her Georgia driver's license was suspended at the time of the accident. This evidence, even if known to Alamo at the time of the rental, is insufficient evidence that Williams was incompetent to operate a motor vehicle."
The plaintiffs appeal.
 Standard of Review
This Court reviews a summary judgment de novo. Turner v.Westhampton *Page 412 Court, L.L.C., 903 So.2d 82, 87 (Ala. 2004). We seek to determine whether the movant has made a prima facie showing that there exists no genuine issue of material fact and that the movant is entitled to a judgment as a matter of law. Rule 56, Ala. R. Civ. P.; Turner, supra. In reviewing a summary judgment, this Court reviews the evidence in the light most favorable to the nonmovant. Turner, supra. Once the movant makes a prima facie showing that it is entitled to a summary judgment, the burden then shifts to the nonmovant to produce "substantial evidence" creating a genuine issue of material fact.Bass v. SouthTrust Bank of Baldwin County, 538 So.2d 794,797-98 (Ala. 1989); Ala. Code 1975, § 12-21-12. "Substantial evidence" is "evidence of such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved."West v. Founders Life Assurance Co. of Florida, 547 So.2d 870,871 (Ala. 1989).
 Analysis
On appeal, the plaintiffs argue (1) that this Court should hold that the Alamo defendants had a duty to determine Williams's status as a licensed driver, and (2) that the fact that Williams's driver's license was suspended renders her incompetent per se. Because an appropriate resolution of this case can be reached without addressing the duty issue, we pretermit discussion of that issue.
 "The essential ingredients of a cause of action for negligent entrustment are: (1) an entrustment; (2) to an incompetent; (3) with knowledge that he is incompetent; (4) proximate cause; and (5) damages."
Mason v. New, 475 So.2d 854, 856 (Ala. 1985) (emphasis added). With respect to Williams's alleged incompetence, we must first determine whether the Alamo defendants made a prima facie showing that there was no genuine issue of material fact as to this element.
In Thompson v. Havard, 285 Ala. 718, 235 So.2d 853 (1970), a jury rendered a verdict, upon which judgment was entered, in favor of the defendant, who was alleged to have negligently entrusted her automobile to her son. Although in Thompson the plaintiff's appeal assigned as error the giving of two jury charges concerning the defendant's duty, this Court first sought to determine whether there was evidence sufficient "to take the issue of driver incompetency to the jury." 285 Ala. at 722,235 So.2d at 857. In undertaking to answer that question, the Court considered the Texas case of Broesche v. Bullock, 427 S.W.2d 89
(Tex.Civ.App. 1968), to be "on point." In that case, a 20-year-old driver, who had been driving for about 3 years, was found to be incompetent. During his three-year experience as a licensed driver, he had received four tickets for speeding, one ticket for running a red light, one ticket for racing on public roadways, and both a written warning and a letter of reprimand from the Texas Department of Public Safety. 285 Ala. at 722,235 So.2d at 857. The Texas Court of Civil Appeals stated:
 "`While proof of only one previous traffic violation is grossly inadequate to establish incompetency or recklessness, and proof of two moving violations or accidents within a two year period prior to the accident made the basis of the suit, is probably insufficient, in this case the evidence presents proof of seven citations for moving traffic violations, a warning letter, disciplinary actions and restrictions taken against the minor driver because of his driving. . . . We believe that there is evidence and that it is sufficient to show that [the minor] was a reckless and incompetent driver.'" *Page 413 Thompson, 285 Ala. at 722-23, 235 So.2d at 857 (quotingBroesche, 427 S.W.2d at 93) (citations omitted; emphasis added). In comparing the facts of Broesche to the facts before it, the Thompson Court noted that it was dealing with a minor driver who in a period of three years had been cited eight times for speeding, once for reckless driving, once for a traffic-signal violation, and once for driving without a driver's license. Thompson, 285 Ala. at 722, 235 So.2d at 857. Therefore, the Court concluded, the facts before it, involving convictions for 11 moving violations within approximately 3 years, "weigh[ed] further against the competency" of the driver than the 7 citations for moving violations involved inBroesche, and thus the question of his competency to operate the vehicle "was one of fact for the jury to decide."285 Ala. at 723, 235 So.2d at 857.
In Day v. Williams, 670 So.2d 914 (Ala. 1995), a plaintiff appealed a summary judgment in favor of the defendant. In Day, the defendant sold, and therefore entrusted, an automobile to a man named Vernon. Although there was evidence indicating that the defendant was unaware of the fact that Vernon did not have a driver's license, this Court stated:
 "[E]ven if [the defendant] had been aware of that fact, that alone would not support a finding of negligent entrustment, under the circumstances of the case. The record indicates that Vernon was an experienced adult driver and had exhibited no indication that he was an incompetent driver.
Although he had previously received several tickets for driving without a license, Vernon had previously received only one other traffic citation; that was for speeding, and he had received that ticket approximately two years before the accident. The plaintiffs presented no evidence indicating that [the defendant] had reason to believe Vernon was an incompetent driver. Vernon's competence as a driver does not hinge upon the existence or nonexistence of a driver's license in his name."
670 So.2d at 916 (emphasis added). Consequently, we concluded that the plaintiff in Day failed to present substantial evidence of Vernon's incompetence as a driver to avoid a summary judgment in favor of the defendant. 670 So.2d at 917.
Finally, in Pryor v. Brown Root USA, Inc., 674 So.2d 45
(Ala. 1995), a summary judgment was entered in favor of the defendant despite the presentation of evidence indicating that the person to whom the defendant entrusted its vehicle had been charged with driving under the influence of alcohol within 10 years of the accident in question and had received 2 speeding tickets within 5 years of the accident. 674 So.2d at 51. We affirmed the summary judgment, stating that the entrustee's prior driving record "[was] not sufficient to support a claim of negligent entrustment" because the plaintiff "failed to present substantial evidence that [the entrustee] was an incompetent driver." 674 So.2d at 52.
The plaintiffs here make no attempt to distinguish Thompson, but they do offer distinctions between the facts before us and those in Day and in Pryor. They observe, correctly, that inDay, Vernon (the entrustee) was an unlicensed driver, not a person whose license had been suspended, and that the driver inPryor held an active and valid driver's license at the time of the accident that was the basis of that case.
However accurate those distinctions may be, they do not alter how this Court should apply the law to the facts at hand.Thompson, Day, and Pryor establish a simple proposition: the incompetence of a driver is measured by the driver's demonstrated *Page 414 
ability (or inability) to properly drive a vehicle. Those cases belie any per se test based on the driver's possession of, or lack of, a valid driver's license. Looking then to the evidence in the record, we note that Williams had been cited for failure to display a tag, a "nonmoving" offense. Her ensuing suspension was a direct result not of that traffic citation, but of her failure to appear in traffic court to answer the citation. Thus, her suspension was essentially administrative in nature; it had no relation to her actual ability or inability to properly handle an automobile on the road. Moreover, on the same day she rented the automobile from the Alamo defendants, Williams had appeared in traffic court to pay for both the traffic citation and the fine assessed for her failure to appear.
We conclude that the Alamo defendants satisfied their burden of making a prima facie showing that there existed no evidence to support a finding that Williams was an incompetent driver. Consequently, the burden then shifted to the plaintiffs to produce substantial evidence indicating that Williams was an incompetent driver.
The plaintiffs appear to present two separate questions in their appeal. First, they argue that there existed substantial evidence of Williams's incompetence as a driver. They point to one additional fact they contend combines with the suspended driver's license to constitute substantial evidence of Williams's incompetence. Specifically, they note:
 "[T]his was Williams['s] second suspension, and . . . in the preceding 64 months, Williams held a valid license for a period of only 15 months prior to receiving the citation which ultimately led to her second suspension. The record reveals that her first suspension resulted from her failure to appear and pay a fine for a traffic violation she received in November, 1993."
(Plaintiffs' reply brief, at 4-5.) This evidence reveals that Williams's license has been suspended twice for failure to appear and to pay a fine for a traffic violation. As concerns Williams's actual ability to properly operate a motor vehicle, then, both suspensions appear to be administrative in nature — not related to Williams's actual driving habits or abilities.
Under our caselaw, we cannot conclude that evidence that Williams's driver's license had been suspended or evidence indicating that such a suspension had previously occurred constitutes substantial evidence of Williams's incompetence as a driver. This conclusion is supported by the fact that details in the record are sparse about the nature of the first suspension. There is no information about the nature of the violation for which Williams was cited in 1993. Without further knowledge of the nature of Williams's first traffic violation, we cannot determine whether the underlying conduct indicated any incompetence in driving a vehicle or whether the violation was, like the second, a nonmoving one. The burden of presenting such evidence was upon the plaintiffs, and because we have no further information beyond the fact of the 1993 traffic violation, we do not deem the evidence presented to be substantial evidence indicating Williams's incompetence.
The plaintiffs essentially concede that the two suspensions of Williams's driver's license constitute the only evidence supporting their argument. They therefore argue that "this case poses the question of whether one with a suspended license is competent to operate an automobile upon the public highways of this state," and elsewhere observe that "[t]his case presents [a] question of first impression for *Page 415 
this Court. [D]oes a suspended drivers [sic] license render one incompetent?" (Plaintiffs' brief, at 20-21, 32.) The plaintiffs essentially seek a bright-line rule declaring that the suspension of a driver's license, regardless of the reason for the suspension, constitutes substantial evidence indicating a person's per se incompetence to properly drive an automobile. The plaintiffs provide several arguments intended to advance this proposition.
First, they cite a 1979 edition of Black's Law Dictionary, which defined "incompetency" as:
 "Lack of ability, legal qualification, or fitness to discharge the required duty or professional obligation. A relative term which may be employed as meaning disqualification, inability or incapacity and it can refer to lack of legal qualifications or fitness to discharge the required duty and to show want of physical or intellectual or moral fitness."
Black's Law Dictionary 688-89 (5th ed. 1979). They then argue that because both Alabama and Georgia have enacted laws prohibiting an individual whose license has been suspended from operating a vehicle on the public highways, Ala. Code 1975, §32-6-19; Ga. Code Ann. § 40-5-122 (1990), the legislature of each of those states has deemed individuals whose licenses are suspended to be "incapable" and "legally unqualified" to drive and thus, under the definition provided above, "incompetent." Although the plaintiffs concede that "unlicensed" does not necessarily mean "incompetent," their argument relies upon the notion that suspension is a state action and that another state's suspension of one's license will result in Alabama's refusal to license that driver.
Twenty years after the publication in 1979 of the fifth edition of Black' Law Dictionary, the seventh edition was published; the latter edition revised (among many things) the definition of "incompetency." Five years later, the eighth edition was published, carrying forward the revisions made in the seventh edition. Both of these later two editions split the term "incompetency," used in the fifth edition, into three similar terms:
 "incompetence, n. 1. The state or fact of being unable or unqualified to do something the dispute was over her alleged incompetence as a legal assistant. 2. INCOMPETENCY the court held that the affidavit was inadmissible because of the affiant's incompetence.
 "incompetency, n. Lack of legal ability in some respect, esp. to stand trial or to testify once the defense lawyer established her client's incompetency, the client did not have to stand trial. . . .
". . . .
 "incompetent, adj. 1. (Of a witness) unqualified to testify. . . . 2. (Of evidence) inadmissible. . . ."
Black's Law Dictionary 780 (8th ed. 2004); Black's LawDictionary 768-69 (7th ed. 1999).
Using the more precise definitions provided in the later editions of Black's, we conclude that the plaintiffs' definitional argument hinges upon the definition for what is currently referenced as "incompetency." Their argument is essentially that in order to prove incompetence to operate a vehicle, one may present factual evidence of another's inability to drive an automobile or one may present evidence of another's legal incompetency. Our caselaw demonstrates, however, that we are solely concerned with a person's actual driving ability, not a legal disqualification. Thus our analysis hews closer to the first definition for "incompetence." Moreover, to hold otherwise would bring into question our analysis in Day, where, as noted earlier, we held that the entrustee's "competence as a driver does not hinge upon the existence or non-existence *Page 416 
of a driver's license in his name." 670 So.2d at 916. Consequently, we do not find that the declaration by the State of Alabama or the State of Georgia of one's legal inability to drive indicates a legislative decision to declare the holder of a suspended driver's license to be presumptively incompetent to operate a vehicle.
The plaintiffs' second argument is that Alamo's rental agreement justifies a finding that the suspension of a driver's license equals incompetence. The agreement provides:
 "Authorized Drivers: I am the authorized driver if I have a valid driver's license, are [sic] named on the front of the rental agreement and meet all of your rental requirements. An additional authorized driver is authorized only if they pay an additional driver charge and that person has a valid driver's license and is named on the front. ALL OTHER DRIVERS ARE UNAUTHORIZED. I am responsible for any losses or damages which occur while the car is in the possession of any owner."
The plaintiffs argue that this language reflects Alamo's judgment that "the possession of a valid drivers [sic] license is the most reliable method available to insure that its automobiles are rented to competent drivers." This argument focuses upon Williams's status as an unauthorized driver to indicate that she was an incompetent driver. Because the function of the Alamo policy is merely to declare the legal rights as between Williams and Alamo, and, according to the testimony of the manager of Alamo's Atlanta airport branch, its desire for a valid license is to minimize car theft (plaintiffs' reply brief, at 1), we again will not hold that the suspension of Williams's driver's license equated to proof of her incompetence to operate a motor vehicle.
The plaintiffs' third argument is based upon legislative findings incorporated into the Safe Streets Act of 1995, Ala. Code 1975, §§ 32-5A-200 through-205 ("the SSA"), which, we note, was repealed in 1998, less than three years after its enactment and before Williams rented from the Alamo defendants. Moreover, this argument was not raised by the plaintiffs in their memoranda opposing the summary-judgment motion. "This Court cannot consider arguments advanced for the purpose of reversing the judgment of a trial court when those arguments were never presented to the trial court for consideration or were raised for the first time on appeal." State Farm Mut. Auto. Ins. Co. v. Motley,909 So.2d 806, 821 (Ala. 2005) (quoting Crutcher v. Wendy's of NorthAlabama, Inc., 857 So.2d 82, 97 (Ala. 2003)).
Fourth, the plaintiffs cite this Court's decision inCommercial Union Insurance Co. of New York v. Security GeneralInsurance Co., 282 Ala. 344, 211 So.2d 477 (1968), in which we stated:
 "A lapsed license for failure to renew is distinguished from a revoked, suspended, or a refused license in that in the first instance the license becomes inoperative by lapse of time, the competency of the licensee as a driver not being involved, whereas a revoked or suspended license usually results from violation of traffic laws which does reflect upon the competency of the licensee."
282 Ala. at 351, 211 So.2d at 482. Although this is a generally true statement, it does not stand for the proposition the plaintiffs seek to establish. Our statement in Commercial Union
was made in the context of evaluating whether an individual who had applied for automobile insurance coverage using a driver's license number from a driver's license that had *Page 417 
expired was liable for misrepresentation. Misrepresentation was to be determined according to whether the statements could potentially increase the risk of loss to the insurer. We distinguished between a lapsed license and a revoked, suspended, or refused driver's license because the former did not tend to increase the risk assumed in covering the licensee, while the remaining three, which usually resulted from a violation of traffic laws that reflected upon the driver's competency, could have a tendency to increase the insurer's risk. As noted, the suspension of Williams's driver's license resulted from her failure to appear in municipal court in Georgia to address a citation for a nonmoving traffic offense. In Commercial Union, we set forth no bright-line rule concerning a driver's competency; rather, we were explaining the practical realities as they impacted the materiality of the applicant's misrepresentation.
Finally, the plaintiffs argue that Mason v. New,475 So.2d 854 (Ala. 1985), indicates that the suspension of Williams's driver's license should constitute substantial evidence of her incompetence. In Mason, Sandra New, who had failed her written driver's license examination three times, borrowed her husband's truck and collided with a motorcycle, injuring the operator of the motorcycle. The operator, Mason, sued Sandra's husband, Randall, alleging negligent entrustment. Randall filed a motion in limine seeking to have evidence of Sandra's three driver's license examination failures excluded. The trial court granted the motion and, finding insufficient evidence of Sandra's incompetence, entered a judgment for Randall. This Court reversed the judgment, holding that the court had erred in granting the motion in limine, and stating that the evidence was probative of Sandra's incompetency and should have been admitted.475 So.2d at 856. It is important to note, however, that Mason ruled on the admissibility of the evidence, noting that it was "probative of [Sandra's] possible inexperience and lack of skill."475 So.2d at 856. What Mason did not do was rule upon the weight of the evidence. In the action before us, evidence of Williams's suspended driver's license is before us, along with related evidence indicating that she had been previously licensed and therefore had necessarily passed the required licensing test, probative of her competency.
Having considered all of these arguments, we decline to hold that evidence that a person's driver's license has been suspended for failure to disprove, or to pay the fine for, a nonmoving violation constitutes substantial evidence indicating the driver's incompetence. Rather, we are content with the current method of determining the competence or incompetence of one to whom an automobile is entrusted: the presentation of evidence relevant to that person's mental and physical abilities and his or her prior driving experience and record.
 Conclusion
The Alamo defendants have made a prima facie showing that there is no genuine issue of material fact and that they are entitled to a judgment as a matter of law. The plaintiffs have failed to present substantial evidence indicating that Williams was incompetent. Evidence of the suspension of one's driver's license for failure to discharge a citation for a nonmoving violation is not substantial evidence, standing alone, of incompetence to operate a vehicle. The summary judgment in favor of the Alamo defendants is affirmed.
AFFIRMED.
NABERS, C.J., and SEE, STUART, and BOLIN, JJ., concur.
[1] After the accident that is the basis for this action, Republic changed its name to Autonation. At all relevant times Republic and subsequently Autonation did business through Alamo.
[2] This case involved numerous withdrawals and appearances by various attorneys for both the plaintiffs and the Alamo defendants. At one point, Woods ceased to be represented by counsel representing the other plaintiffs and engaged another lawyer to represent her.
[3] On November 30, 2001, the Alamo defendants filed a suggestion of bankruptcy and informed the court of the institution of an automatic stay pursuant to 11 U.S.C. § 362(a). All litigation was therefore suspended. On July 23, 2003, the parties filed a joint stipulation agreeing to lift the automatic stay in order to conclude the litigation. *Page 418