[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 137 
The plaintiffs Benjamin Hollis and Diana Hollis, husband and wife ("the plaintiffs"), appeal a summary judgment for the defendant City of Brighton ("the City"). We affirm in part, reverse in part, and remand the case to the trial court for further proceedings consistent with this opinion.
After a fire destroyed the plaintiffs' house, the plaintiffs sued the City for failing to extinguish the fire and for preventing the plaintiffs from trying to extinguish it. The plaintiffs claimed that the City was directly liable for negligence on the theory that the City, by creating a fire *Page 138 
department, undertook a duty to provide the plaintiffs with skillful fire protection and then breached this duty through the unskillful acts or omissions of the City-created fire department in responding to the fire. In addition, the plaintiffs claimed that the City was vicariously liable for negligence or wantonness based on the same unskillful acts or omissions of the members of the fire department. Finally, the plaintiffs claimed that the City was vicariously liable for the negligence or wantonness of a City policeman in allegedly ordering the plaintiffs not to reenter the burning house to fight the fire.
In moving for a summary judgment, the City asserted that it was entitled to immunity from the plaintiffs' claims. First, the City claimed substantive immunity from the plaintiffs' claims for direct liability and vicarious liability for the acts or omissions of the fire department and its firefighters and from the claim for vicarious liability for the act of the policeman. Second, the City asserted that the Voluntary Service Act, §6-5-336, Ala. Code 1975, immunized the volunteer firefighters individually and that their immunity protected them from liability and thereby protected the City from vicarious liability for the firefighters' torts, if any. Third, the City similarly asserted that § 6-5-338(a), Ala. Code 1975, immunized the policeman individually and that his immunity protected him from liability and thereby protected the City from vicarious liability for his tort, if any. In support of the summary-judgment motion, the City submitted an affidavit by the mayor, testifying in pertinent part:
 "4. The City of Brighton is a small town located in Jefferson County, Alabama with a population of approximately 4,500.
 "5. At the time of the fire on December 2, 1999, Brighton operated a volunteer fire department which consisted of approximately 9 local residents who served in a strictly volunteer capacity.
 "6. The Brighton Volunteer Fire Department had 3 fire trucks.
 "7. No firemen stayed at the station, and the volunteers kept their uniforms at home.
 "8. At the time of the fire forming the basis of plaintiffs' complaint, when a fire was reported to the dispatcher the following procedures were followed: 1) the dispatcher would flip a master switch and the firemen's pagers would sound, giving the location of the fire; 2) the dispatcher would turn on the fire siren; 3) the firemen would hear the pager, get dressed at home or on the way, and report to station; 4) the first two firemen who arrived would take the fire truck and go to the fire; 5) other firemen would take other trucks as they arrived at the fire station."
In response, the plaintiffs argued that: (1) substantive immunity was not applicable to their claims of direct and vicarious liability of the City for the failures of the fire department and its firefighters or to their claim of vicarious liability of the City for the act of the policeman, (2) § 6-5-336
immunity was not applicable because the firefighters were not "volunteers" within the meaning of the Voluntary Service Act, and (3) § 6-5-338(a) immunity was not applicable to the policeman's ordering the plaintiffs to stay out of the house because his order was not a discretionary act. The plaintiffs cited Williamsv. City of Tuscumbia, 426 So.2d 824 (Ala. 1983), and Ziegler v.City of Millbrook, 514 So.2d 1275 (Ala. 1987), in support of the argument that substantive immunity was not available to the City.
The plaintiffs argued that the firefighters were not volunteers because the City paid the firefighters a stipend for expenses of $10 per fire. In support of this argument, *Page 139 
the plaintiffs submitted deposition testimony from two of the firefighters. The two firefighters testified about the volunteer status of the firefighters, in pertinent part:
 "Q. Whose job is it when a fire is called in, to make sure that there's enough people to respond to man the fire trucks and to use the equipment to put out a fire?
 "A. That's hard because there is no job. It's not a job. We work as a team and you come out there. Whoever's available to respond to come out, they'll come out.
"Q. And if there's nobody available, nobody responds?
"A. If nobody's there, nobody will respond.
". . . .
 "Q. Well the firefighters that do go out to fight a fire, they get paid what? $10.00 per fire?
"A. Yeah. That's for gas, not for fighting the fire.
"Q. But you get ten dollars?
"A. Yes.
". . . .
 "Q. Do you get paid more than the other firefighters as assistant [chief]?
"A. All the guys get the same.
". . . .
 "Q. So the only gas that you use in responding to a fire would be two miles, a mile there and a mile back, right?
"A. Yeah.
". . . .
 "Q. But, I mean, it doesn't cost you ten dollars worth of gas to drive from City Hall and back, right?
"A. That's what we get for gas."
 "Q. Now how many people were on the active list of firefighters on December 2nd, 1999?
"A. There was eight of us.
". . . .
"Q. That were available for duty on December 2nd?
 "A. That — They were volunteer firemen. All of them didn't respond — All of them don't respond to every fire because they have private jobs.
"Q. Depends on who's available?
"A. That's it."
"Q. How much do you get paid for answering each fire?
 "A. We don't get paid. They just give us a little small donation once a month, ten dollars.
"Q. They give you ten dollars per fire?
"A. That's it."
The trial court entered a summary judgment "based upon substantive and discretionary immunity." On appeal, the plaintiffs argue that this Court should reverse the summary judgment for the same reasons the plaintiffs argued to the trial court against the summary-judgment motion. Likewise, the City argues that this Court should affirm the summary judgment for the same reasons the City argued to the trial court in favor of the summary-judgment motion.
 Issues
The dispositive issues are: (1) whether the City, by creating a volunteer fire department, undertook a duty to provide skillful fire protection, (2) whether § 6-5-336 protects the City from vicarious liability for the unskillful acts or omissions of volunteer firefighters in responding to a fire, and (3) whether §6-5-338(a) protects *Page 140 
the City from vicarious liability for the policeman's ordering the plaintiffs not to reenter the burning house to try to extinguish the fire.
 Law and Analysis 1. General Principles of Appellate Review
"We review a summary judgment de novo." Potter v. First RealEstate Co., 844 So.2d 540, 545 (Ala. 2002) (citation omitted). "Summary judgment is appropriate only when `there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law.'" Ex parte Rizk,791 So.2d 911, 912 (Ala. 2000) (citations omitted).
 "In determining whether the nonmovant has created a genuine issue of material fact, we apply the `substantial-evidence rule' — evidence, to create a genuine issue of material fact, must be `substantial.' § 12-21-12(a), Ala. Code 1975. `Substantial evidence' is defined as `evidence of such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved.' West v. Founders Life Assurance Co. of Florida, 547 So.2d 870, 871 (Ala. 1989)."
Callens v. Jefferson County Nursing Home, 769 So.2d 273, 278-79
(Ala. 2000) (footnote omitted). In deciding a motion for a summary judgment, or in reviewing a summary judgment, the court must accept the tendencies of the evidence most favorable to the nonmoving party and must resolve all reasonable factual doubts in favor of the nonmoving party. Bruce v. Cole, 854 So.2d 47 (Ala. 2003), and Pitney Bowes, Inc. v. Berney Office Solutions,823 So.2d 659 (Ala. 2001). See Ex parte Helms, 873 So.2d 1139 (Ala. 2003), and Willis v. Parker, 814 So.2d 857 (Ala. 2001).
A defendant who moves for a summary judgment on the ground of an affirmative defense "`must support his motion with credible evidence, using any of the materials specified in Rule 56(c), [Ala.] R. Civ. P. ("pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits"). The movant's proof must be such that he would be entitled to a directed verdict if this evidence was not controverted at trial.'" Ex parte General Motors Corp.,769 So.2d 903, 909 (Ala. 1999) (quoting Berner v. Caldwell,543 So.2d 686, 691 (Ala. 1989) (Houston, J., concurring specially)). On the other hand, a defendant who moves for a summary judgment on the ground of "a failure of the [plaintiff's] evidence . . . must indicate where the [plaintiff's] case suffers an evidentiary failure." Kennedy v. Western Sizzlin Corp., 857 So.2d 71, 78
(Ala. 2003). If such a summary-judgment motion "does not inform the trial court (and the [plaintiff]) of a failure of the [plaintiff's] evidence on a fact or issue, no burden shifts to the [plaintiff] to present substantial evidence on that fact or issue. Therefore, summary judgment for a failure of proof not asserted by the motion for summary judgment is inappropriate."Tanner v. State Farm Fire Cas. Co., 874 So.2d 1058, 1068 n. 3 (Ala. 2003) (citations omitted).
Thus, on the one hand, a trial court should not grant a summary judgment, and an appellate court will not affirm one, on the basis of an absence of substantial evidence to support an essential element of a claim or affirmative defense unless the motion for a summary judgment has properly raised that absence of evidence and has thereby shifted to the nonmoving party the burden of producing substantial supporting evidence. Ex parteGeneral Motors Corp., supra, Liberty Nat'l Life Ins. Co. v.University of Alabama *Page 141 Health Servs., 881 So.2d 1013, 1020 (Ala. 2003), and Tanner, 874 So.2d at 1068 n. 3. On the other hand, so long as the motion for a summary judgment has properly raised the absence of substantial evidence and the nonmoving party has not carried the shifted burden by producing substantial evidence, an appellate court will affirm a summary judgment on the basis of a law or legal principle not invoked by the moving party or the trial court, even though an appellate court will not reverse a summary judgment on the basis of a law or legal principle not first argued to the trial court by the nonmoving party. Ex parteRyals, 773 So.2d 1011, 1013 (Ala. 2000), and Smith v. EquifaxServs., Inc., 537 So.2d 463, 465 (Ala. 1988).
 2. Direct Liability of the City for the Acts or Omissions of the Fire Department
On the one hand, a city is under no statutory duty to provide fire protection. Williams v. City of Tuscumbia, 426 So.2d 824,825 (Ala. 1983); see § 11-43-140, Ala. Code 1975 ("Cities and towns may maintain and operate a volunteer or paid fire department and may do any and all things necessary to secure efficient service. . . .") (emphasis added). On the other hand, this Court held in Ziegler v. City of Millbrook, 514 So.2d 1275
(Ala. 1987), and in Williams that the City of Millbrook and the City of Tuscumbia, respectively, by creating professional fire departments, had thereby undertaken a duty to provide skillful fire protection. This Court further held that, if the unskillfulness of the firefighters employed by the City of Millbrook and the City of Tuscumbia, respectively, caused a breach of that duty, the respective cities would be directly liable for the breach.
Ziegler and Williams, however, are distinguishable from the case now before us. The fire departments created by the City of Millbrook and the City of Tuscumbia were professional fire departments rather than volunteer fire departments. Because, in creating a volunteer fire department, a city is relegated to the vagaries of volunteer manpower, the undertaking by the city is too indistinct to support a legally enforceable duty to provide skillful fire protection.
The plaintiffs argue that the $10-per-fire stipend for expenses, which the City paid to the firefighters, constituted substantial evidence that the firefighters received compensation from the City and, therefore, constituted substantial evidence that the firefighters were professionals rather than volunteers. However, the plaintiffs presented neither evidence contradicting the firefighters' testimony that the $10-per-fire stipend was strictly reimbursement of expenses nor affirmative evidence that the $10-per-fire stipend was compensation for services. Thus, the undisputed evidence established that the firefighters were neither obliged to respond to a fire nor compensated for their services. The payment of the token $10-per-fire stipend for expenses does not constitute substantial evidence contrary to this conclusion.
We hold that in creating a volunteer fire department, a city does not thereby undertake a legally enforceable duty to provide skillful fire protection. Accordingly, without reaching the issue whether the City was due substantive immunity from the plaintiffs' claim for direct liability for the acts or omissions of the firefighters, we affirm the summary judgment on that direct liability claim on the ground that the City did not owe a duty to provide skillful fire protection.
 3. Vicarious Liability of the City for the Acts or Omissions of the Firefighters
The vicarious liability of a putative master under the rule of respondeat *Page 142 
superior depends upon the liability of the putative servant. SeeLarry Terry Contractors, Inc. v. Bogle, 404 So.2d 613, 614 (Ala. 1981) ("`[W]hen [a] principal and his agent are sued in [a] joint action in tort for misfeasance or malfeasance of the servant, and his liability for the conduct of said servant is under the rule of respondeat superior, a verdict in favor of the servant entitles the master to have the verdict against him set aside.'") (quoting Louisville N.R.R. v. Maddox, 236 Ala. 594, 600,183 So. 849, 853 (1938)), and Gore v. City of Hoover,559 So.2d 163, 165 (Ala. 1990), overruled on other grounds, Franklin v.City of Huntsville, 670 So.2d 848 (Ala. 1995) (holding that a city could not be held vicariously liable for the act of a magistrate who was immune from liability). Thus, if a putative servant is not liable, either because he is innocent or because he is immune, no liability exists to be visited upon the putative master under the rule of respondeat superior. Id.
The Volunteer Service Act provides in pertinent part:
 "(c) For the purposes of this section, the meaning of the terms specified shall be as follows:
 "(1) GOVERNMENTAL ENTITY. Any . . . municipality. . . .
". . . .
 (4) VOLUNTEER. A person performing services for . . . a governmental entity without compensation, other than reimbursement for actual expenses incurred. . . .
 "(d) Any volunteer shall be immune from civil liability in any action on the basis of any act or omission of a volunteer resulting in damage or injury if:
 "(1) The volunteer was acting in good faith and within the scope of such volunteer's official functions and duties for . . . a governmental entity; and
 "(2) The damage or injury was not caused by willful or wanton misconduct by such volunteer."
§ 6-5-336, Ala. Code 1975.
As discussed above, the firefighters, the putative servants in the case now before us, were volunteers who did not receive compensation for their service as volunteer firefighters. Consequently, they were immune from liability for negligence under the Volunteer Service Act. Because the firefighters were immune from liability for negligence under the Volunteer Service Act, no liability for negligence could befall them to be visited upon the City, the putative master in the case now before us. While the plaintiffs allege not only negligence but also wantonness by the firefighters, and while § 6-5-336 excepts wanton volunteers from the immunity, a city cannot be liable for wanton conduct. Town of Loxley v. Coleman, 720 So.2d 907, 909
(Ala. 1998), and Hilliard v. City of Huntsville, 585 So.2d 889,892 (Ala. 1991). Therefore, we affirm the summary judgment on the plaintiffs' claim for vicarious liability for the acts or omissions of the volunteer firefighters.
 4. Vicarious Liability of the City for the Act of the Policeman
The City invokes § 6-5-338 immunity against vicarious liability for the act of the policeman. Section 6-5-338(a) provides in pertinent part:
 "(a) Every peace officer . . . employed . . . by . . . [a] municipality [subject to conditions not relevant in the present lawsuit] shall at all times be deemed to be officers of this state, and as such shall have immunity from tort liability arising out of his or her conduct in performance of any discretionary function *Page 143 within the line and scope of his or her law enforcement duties."
(Emphasis added.)
Whether a qualified peace officer is due § 6-5-338(a) immunity is now judged by the restatement of State-agent immunity articulated by Ex parte Cranman, 792 So.2d 392 (Ala. 2000), and adopted by a majority of this Court in Ex parte Butts,775 So.2d 173 (Ala. 2000), and Ex parte Rizk, 791 So.2d 911 (Ala. 2000). Howard v. City of Atmore, [Ms. 1021312, Dec. 12, 2003] ___ So.2d ___, ___ (Ala. 2003) ("Since Cranman, we analyze immunity issues [under § 6-5-338(a)] in terms of `State-agent' immunity [as restated in Cranman], rather than `under the dichotomy of ministerial versus discretionary functions'") (quoting Ex parte Hudson, 866 So.2d 1115, 1117 (Ala. 2003));see Giambrone v. Douglas, 874 So.2d 1046, 1051 (Ala. 2003), andEx parte Turner, 840 So.2d 132, 134 n. 1 (Ala. 2002). Cranman
reads:
 "We therefore restate the rule governing State-agent immunity:
 "A State agent shall be immune from civil liability in his or her personal capacity when the conduct made the basis of the claim against the agent is based upon the agent's [some emphasis added, some original]
"(1) formulating plans, policies, or designs; or
 "(2) exercising his or her judgment in the administration of a department or agency of government, including, but not limited to, examples such as:
"(a) making administrative adjudications;
"(b) allocating resources;
"(c) negotiating contracts;
 "(d) hiring, firing, transferring, assigning, or supervising personnel; or
 "(3) discharging duties imposed on a department or agency by statute, rule, or regulation insofar as the statute, rule, or regulation prescribes the manner for performing the duties and the State agent performs the duties in that manner; or
 "(4) exercising judgment in the enforcement of the criminal laws of the State, including, but not limited to, law-enforcement officers' arresting or attempting to arrest persons [emphasis added]; or
 "(5) exercising judgment in the discharge of duties imposed by statute, rule, or regulation in releasing prisoners, counseling or releasing persons of unsound mind, or educating students.
 "Notwithstanding anything to the contrary in the foregoing statement of the rule, a State agent shall not [emphasis original] be immune from civil liability in his or her personal capacity
 "(1) when the Constitution or laws of the United States, or the Constitution of this State, or laws, rules, or regulations of this State enacted or promulgated for the purpose of regulating the activities of a government agency require otherwise; or
 "(2) when the State agent acts willfully, maliciously, fraudulently, in bad faith, beyond his or her authority, or under a mistaken interpretation of the law."
792 So.2d at 405.
We notice a difference between certain critical language in the statute, § 6-5-338(a), and certain critical language in theCranman restatement describing the conduct immunized. That is, the statute refers to "conduct in performance of any discretionary function within the line and scope of his or her law enforcement duties" while immune category (4) of theCranman restatement refers to conduct "exercising judgment in the enforcement of the criminal laws of the State, including, *Page 144 
but not limited to, law-enforcement officers' arresting or attempting to arrest persons." In the particular case now before us, we need not decide whether or how the difference between the language of the statute and the language of the Cranman
restatement affects the scope of the immunity, since the record does not establish without dispute or as a matter of law that the act of the policeman in ordering the plaintiffs not to reenter the burning house to fight the fire fits within either
description of immune conduct. Nor does the record establish without dispute or as a matter of law that the act of the policeman fits within any of the other Cranman categories of immune conduct. Thus, we cannot rely on the § 6-5-338(a) immunity, as described by either the statute itself or theCranman restatement, to affirm the summary judgment on the plaintiffs' claim for vicarious liability for the act of the policeman. See Ex parte Rizk, 791 So.2d at 914:
 "Dr. Rizk's treatment of his patient, the plaintiff's decedent, does not fit within any of the categories of immune State-agent conduct contained in the Cranman restatement. Therefore, Dr. Rizk is not immune."
The policeman may or may not have been negligent in ordering the plaintiffs not to reenter the burning house to fight the fire. Thus, the City may or may not be liable for his conduct. That issue is not before us because the summary-judgment motion of the City did not raise the factual merits of the plaintiffs' claims. See Liberty National and Tanner, supra. Accordingly, while we must reverse the summary judgment on this claim, we express no opinion about the factual merits.
 5. Claim of the City to Substantive Immunity from Suit for the Act of the Policeman
The City also claims substantive immunity from suit for the act of the policeman. Substantive immunity, as it applies to police services however, immunizes only decisions of the governing authorities of a municipality not to deploy police officers or not to deploy more police officers for a particular service. SeeCalogrides v. City of Mobile, 475 So.2d 560 (Ala. 1985);Garrett v. City of Mobile, 481 So.2d 376 (Ala. 1985); andNichols v. Town of Mount Vernon, 504 So.2d 732 (Ala. 1987). Substantive immunity does not immunize a municipality from vicarious liability for the tortious act of a particular police officer. Borders v. City of Huntsville, 875 So.2d 1168, 1183
(Ala. 2003), and City of Birmingham v. Benson, 631 So.2d 902,905 (Ala. 1993):
 "In Calogrides v. City of Mobile, 475 So.2d 560
(Ala. 1985), and Garrett v. City of Mobile, 481 So.2d 376 (Ala. 1985), this Court found substantive immunity in a police context. Calogrides and Garrett arose out of the same event (a fireworks display at Ladd Stadium during which time a gang of youths attacked individuals in the large crowd). The thrust of the plaintiffs' claims was that Mobile was negligent in deciding to deploy only 82 police officers to Ladd Stadium for the fireworks display. This Court held that liability could not be predicated on that basis, because there was only a finite number of officers on Mobile's police force, so no individual could expect complete protection. Garrett, 481 So.2d at 377. This Court has upheld the liability of a city for the negligence of a police officer who was on the scene, where the only question was whether the officer had acted reasonably under the circumstances. Luker v. City of Brantley, 520 So.2d 517 (1987); Tyler v. City of Enterprise, 577 So.2d 876 (Ala. 1991); Seals v. City of Columbia, 575 So.2d 1061 (Ala. 1991). There is no way, under the facts of this case, that the imposition of liability *Page 145 
can be reasonably calculated to materially thwart the City's legitimate efforts to provide public services. Policy considerations supporting immunity do not come into play when a policeman is, in fact on the scene and in a position to control an aggressor. The question then becomes one of whether the officer acted reasonably or acted negligently."
(emphasis in the original); see Howard v. City of Atmore, supra;Williams v. Crook, 741 So.2d 1074 (Ala. 1999), and Jackson v.City of Florence, 294 Ala. 592, 320 So.2d 68 (1975). Vicarious liability is based on the principle of respondeat superior, which is supported by sound policy:
 "[Respondeat superior liability] seems fully justified because (1) it tends to provide a spur toward accident prevention; (2) it tends to provide greater assurance of compensation for accident victims; and (3) at the same time it tends to provide reasonable assurance that, like other costs, accident losses will be broadly and equitably distributed among the beneficiaries of the enterprises that entail them."
Fowler V. Harper, Fleming James, Jr., and Oscar S. Gray, The Lawof Torts § 26.5, at 21 (2d ed. 1986) (footnotes omitted).
 Conclusion
We affirm the summary judgment on the plaintiffs' claims for direct liability and vicarious liability for the alleged acts or omissions of the volunteer firefighters. We reverse the summary judgment on the plaintiffs' claim for vicarious liability for the alleged act of the policeman and remand the case to the trial court for further proceedings consistent with this opinion.
AFFIRMED IN PART; REVERSED IN PART; AND REMANDED.
HOUSTON, HARWOOD, and WOODALL, JJ., concur.
LYONS, J., concurs in the rationale in part and concurs in the judgment.
SEE, BROWN, and STUART, JJ., concur in part and dissent in part.