BOLIN, Justice.
The City of Valley Grande (“the City”) and its mayor, David Labbe, who was sued in his official capacity (hereinafter collectively referred to as “the petitioners”), petition this Court for a writ of mandamus directing the Dallas Circuit Court to vacate its order denying the petitioners’ motion for a summary judgment and to enter a summary judgment for the petitioners on the claims asserted against them by Marcus Kelley, Yolanda Kelley, and Jeffery Barlow, Jr. (hereinafter collectively referred to as “the plaintiffs”). We grant the petition and issue the writ.

Facts and Procedural History

The Valley Grande Volunteer Fire Department (“the fire department”) was incorporated on August 22, 1983, specifically for “charitable purposes within the meaning of Section 501(c)(8) of the Internal Revenue Code of 1954.” The petitioners state that the City was incorporated sometime after the fire department was created. On August 4, 2008, the City entered into an agreement with the fire department pursuant to which the fire department agreed to provide fire-protection service to the City “without remuneration.” However, the petitioners did acknowledge in the fire-service agreement that the City “ha[d] in the past and likely [would] continue to provide [the fire department] with some level of annual funding.” The evidence presented in support of the petitioners’ summary-judgment motion indicates that the City made annual donations of $15,000 to the fire department in the years 2010-2012. Mayor Labbe testified in his affidavit that the City does not maintain a fire department and that it does not employ, train, or supervise firefighters. May- or Labbe testified that the City and the fire department are separate entities and that the City does not maintain or reserve any right of control over the fire department.
On January 25, 2011, James Barlow, Sr., and his mother, Bertha Yeager, were killed in a house fire. W. Alan Dailey, the coroner for Dallas County, pronounced Barlow and Yeager dead at the scene and directed members of the fire department to remove the remains of the deceased from the house. The plaintiffs allege that the fire department represented that it had recovered all the decedents’ remains.[1] The plaintiffs state that in April 2011 the family discovered a body bag at the scene of the fire that contained additional remains of Barlow.
On January 4, 2013, the plaintiffs sued the petitioners, among others, asserting claims of negligence; wantonness; intentional infliction of emotional distress; fraud; suppression; and negligent and/or wanton hiring, training, and supervision of the individual firefighters against both the City and the mayor. On February 12, 2013, the petitioners answered the complaint, asserting certain affirmative defenses, including immunity.
On February 25, 2013, the petitioners moved the trial court for a summary judgment, arguing, among other things, that the petitioners did not employ, supervise, or train any firefighters; that petitioners did not reserve any right of control over the fire department; that the petitioners were entitled to immunity pursuant to the Volunteer Service Act, § 6-5-336, Ala. Code 1975; that the City was immune from suit for intentional torts of its agents, officers, or employees pursuant to § 11-47-190, Ala.Code 1975; and that the peti *370 tioners could not be liable for negligent and/or wanton hiring, training, or supervision of the individual firefighters because, they said, no master-servant relationship existed between the City and the fire department.
On June 11, 2013, the plaintiffs filed their response in opposition to the motion for a summary judgment, arguing that the fire department is de facto the fire department for the City pursuant to a contract entered into between the City and the fire department in which the fire department agreed to provide fire-protection service to the City in exchange for annual funding provided by the City. The plaintiffs further argued that a master-servant relationship existed between the City and the fire department such that the City could be held liable for the actions of the fire department.
On August 28, 2013, the trial court entered an order denying the petitioners’ summary-judgment motion. This petition followed. Because of the procedural posture of this case, we address only those issues grounded on a claim of immunity; we do not address, and the petitioners did not argue, the claim alleging negligent hiring, training, or supervision of the individual firefighters.

Standard of Review

This Court has stated the following regarding the exception to the general rule that the denial of a motion for a summary judgment is not reviewable by a petition for a writ of mandamus and the appropriate standard of review on a petition for a writ of mandamus:
“‘While the general rule is that the denial of a motion for summary judgment is not reviewable, the exception is that the denial of a motion for summary judgment grounded on a claim of immunity is reviewable by petition for writ of mandamus.’ Ex parte Rizk, 791 So.2d 911, 912 (Ala.2000). A writ of mandamus is an extraordinary remedy available only when there is: ‘(1) a clear legal right to the order sought; (2) an imperative duty upon the respondent to perform, accompanied by a refusal to do so; (3) the lack of another adequate remedy; and (4) the properly invoked jurisdiction of the court.’ Ex parte BOC Group, Inc., 823 So.2d 1270, 1272 (Ala.2001).”
Ex parte Nall, 879 So.2d 541, 543 (Ala.2003). However,
“whether review of the denial of a summary-judgment motion is by a petition for a writ of mandamus or by permissive appeal, the appellate court’s standard of review remains the same. If there is a genuine issue as to any material fact on the question whether the movant is entitled to immunity, then the moving party is not entitled to a summary judgment. Rule 56, Ala. R. Civ. P. In determining whether there is a material fact on the question whether the movant is entitled to immunity, courts, both trial and appellate, must view the record in the light most favorable to the nonmoving party, accord the nonmoving party all reasonable favorable inferences from the evidence, and resolve all reasonable doubts against the moving party, considering only the evidence before the trial court at the time it denied the motion for a summary judgment. Ex parte Rizk, 791 So.2d 911, 912 (Ala.2000).”
Ex parte Wood, 852 So.2d 705, 708 (Ala.2002).

Discussion

The petitioners argue that the Volunteer Service Act immunizes the individual firefighters from liability in this case. The petitioners further argue, in reliance on Hollis v. City of Brighton, 885 So.2d 135 (Ala.2004), that, because the individual *371 firefighters are immune from civil liability, they are protected from the vicarious liability for the firefighters’ tortious acts. The plaintiffs contend that the petitioners are liable for the actions of the fire department because of a contractual relationship, as well as a master-servant relationship that they say exists between the petitioners and the individual firefighters.
Section 6-5-336, Ala.Code 1975, provides:
“(a) This section shall be known as ‘The Volunteer Service Act.’
[[Image here]]
“(c) For the purposes of this section, the meaning of the terms specified shall be as follows:
“(1) Governmental entity. Any ... municipality ...;
“(2) Nonprofit corporation. Any corporation which is exempt from taxation pursuant to Section 501(a) of the Internal Revenue Code, 26 U.S.C. Section 501(a);
“(3) Nonprofit organization. Any organization which is exempt from taxation pursuant to Section 501(c) of the Internal Revenue Code, 26 U.S.C. Section 501(c), as amended;
“(4) Volunteer. A person performing services for a nonprofit organization, a nonprofit corporation, a hospital, or a governmental entity without compensation, other than reimbursement for actual expenses incurred. The term includes a volunteer serving as a director, officer, trustee, or direct service volunteer.
“(d) Any volunteer shall be immune from civil liability in any action on the basis of any act or omission of a volunteer resulting in damage or injury if:
“(1) The volunteer was acting in good faith and within the scope of such volunteer’s official functions and duties for a nonprofit organization, a nonprofit corporation, hospital, or a governmental entity; and
“(2) The damage or injury was not caused by willful or wanton misconduct by such volunteer.
“(e) In any suit against a nonprofit organization, nonprofit corporation, or a hospital for civil damages based upon the negligent act or omission of a volunteer, proof of such act or omission shall be sufficient to establish the responsibility of the organization therefor under the doctrine of ‘respondeat superior,’ notwithstanding the immunity granted to the volunteer with respect to any act or omission included under subsection (d).”
This Court has specifically addressed the Volunteer Service Act in the context of fire-protection services provided by a volunteer fire department and the liability of a municipality for the alleged negligent and wanton acts of the firefighters. In Hollis, supra, the plaintiffs sued the City of Brighton alleging that the volunteer fire department had negligently failed to extinguish a fire that destroyed their house. The plaintiffs alleged that the City of Brighton had undertaken a duty to provide skillful fire-protection services by creating a volunteer fire department and then had breached that duty through the negligent acts of the firefighters. The plaintiffs also alleged that the City of Brighton was vicariously liable for the negligent or wanton acts of the individual firefighters in failing to extinguish the fire that destroyed their house.
The City of Brighton argued in support of its motion for a summary judgment that it was entitled to substantive immunity from the plaintiffs’ claims for direct liability and vicarious liability for the acts or omissions of the fire department and its firefighters. The city also argued that the *372 Volunteer Service Act immunized the volunteer firefighters from individual liability and thereby protected the city from vicarious liability for the firefighters’ torts. The plaintiffs argued in response to the motion for a summary judgment that the City of Brighton was.not entitled to substantive immunity on their claims of direct and vicarious liability of the city for the tor-tious acts of the fire department and its firefighters. The plaintiffs also argued that the Volunteer Service Act was not applicable because, they said, the firefighters were not “volunteers” within the meaning of the Volunteer Service Act. The plaintiffs contended that the firefighters were not volunteers because the city paid the firefighters a stipend of $10 per fire for expenses. The trial court entered a summary judgment in favor of the City of Brighton.
On appeal, this Court concluded that the firefighters were “volunteers” within the meaning of the Volunteer Service Act and that, “in creating a volunteer fire department, a city does not thereby undertake a legally enforceable duty to provide skillful fire protection.” Hollis, 885 So.2d at 141. This Court reasoned that “because, in creating a volunteer fire department, a city is relegated to the vagaries of volunteer manpower, the undertaking by the city is too indistinct to support a legally enforceable duty to provide skillful fire protection.” Hollis, 885 So.2d at 141. Thus, this Court affirmed the summary judgment as to the direct-liability claim against the city because “the [c]ity did not owe a duty to provide skillful fire protection.” Id.
As to the claim seeking to hold the City of Brighton vicariously liable for the acts or omissions of the firefighters, this Court stated:
“The vicarious liability of a putative master under the rule of respondeat superior depends upon the liability of the putative servant. See Larry Terry Contractors, Inc. v. Bogle, 404 So.2d 613, 614 (Ala.1981) (‘“[W]hen [a] principal and his agent are sued in [a] joint action in tort for misfeasance or malfeasance of the servant, and his liability for the conduct of said servant is under the rule of respondeat superior, a verdict in favor of the servant entitles the master to have the verdict against him set aside.” ’) (quoting Louisville & N.R.R. v. Maddox, 236 Ala. 594, 600, 183 So. 849, 853 (1938)), and Gore v. City of Hoover, 559 So.2d 163, 165 (Ala.1990), overruled on other grounds, Franklin v. City of Huntsville, 670 So.2d 848 (Ala.1995) (holding that a city could not be held vicariously liable for the act of a magistrate who was immune from liability). Thus, if a putative servant is not liable, either because he is innocent or because he is immune, no liability exists to be visited upon the putative master under the rule of respondeat superior. Id.
[[Image here]]
“As discussed above, the firefighters, the putative servants in the case now before us, were volunteers who did not receive compensation for their service as volunteer firefighters. Consequently, they were immune from liability for negligence under the Volunteer Service Act. Because the firefighters were immune from liability for negligence under the Volunteer Service Act, no liability for negligence could befall them to be visited upon the City [of Brighton], the putative master in the case now before us. While the plaintiffs allege not only negligence but also wantonness by the firefighters, and while § 6-5-336 excepts wanton volunteers from the immunity, a city cannot be liable for wanton conduct. Town of Loxley v. Coleman, 720 So.2d 907, 909 (Ala.1998), and Hilliard v. City *373 of Huntsville, 585 So.2d 889, 892 (Ala.1991).”
Hollis, 885 So.2d at 141-42. Thus, this Court affirmed the summary judgment on the plaintiffs’ claim against the City of Brighton alleging vicarious liability based on the acts or omissions of the volunteer firefighters. Hollis, supra.
Here the plaintiffs seek to circumvent the immunity afforded by the Volunteer Service Act by arguing that the fire department was not a volunteer department within the meaning of the Volunteer Service Act but, rather, that it was a professional fire department operating under the control of the City. The plaintiffs base their contention that the fire department is a professional fee department on the contractual relationship that exists between the City and the fee department and the annual donations made by the City to the fee department.
Initially we note that Mayor Labbe testified in his affidavit that the City does not maintain a fire department and that it does not employ, train, or supervise firefighters. Mayor Labbe further testified that the City and the fire department are separate entities and that the City does not maintain or reserve any right of control over the fire department. The plaintiffs failed to present any evidence to the contrary in their response in opposition to the motion for summary judgment.
The agreement entered into by the City and the fee department specifically provided that the fee department would provide the City fire-protection services “without remuneration.” Nothing in the agreement granted the City any authority to control, train, or supervise the firefighters or the fire department. Although the agreement specifically provided that the individual firefighters would not be paid salaries, it did provide that the City would provide the fire department with some level of funding. In fact, the City donated to the fire department $15,000 for the years 2010-2012. Section 11-43-140, Ala.Code 1975, specifically provides that “[cjities and towns may maintain and operate a volunteer ... fee department and may do any and all things necessary to secure efficient service.” (Emphasis added.) Municipalities may enter into contracts in furtherance of a governmental purpose. § 11-40-1, Ala.Code 1975. Further, § 9-3-18(a), Ala.Code 1975, provides that it is the intent of the legislature to provide assistance to organized volunteer fire departments, which are deemed to be “public in nature, as they protect the health, safety, and welfare of the public.” Therefore, “any municipality ... may donate money, property, equipment, or other thing of value to [organized volunteer fire departments].” § 9-3-18(b), Ala.Code 1975. Based on the foregoing statutory provisions, the attorney general has opined that a municipality may, and in fact should, contract with a volunteer fee department to provide fee services to its citizens in exchange for funds and equipment. See Op. Att’y Gen. No. 2005-046 (January 19, 2005); Op. Att’y Gen. No. 92-00260 (April 24, 1992); and Op. Att’y Gen. No. 84-00279 (May 15, 1984).
We conclude that the agreement between the City and the fire department, as well as the donations made to the fee department by the City, does not alter the fee department’s status as a “volunteer” fire department. Nothing in the agreement between the City and the fire department or in the donations made by the City to the fire department can be construed as converting the volunteer fire department to a professional fire department. The foregoing statutory provisions allow municipalities, including the City, to enter into contracts and to make monetary donations to volunteer fire departments in ex *374 change for fire-protection services without altering the volunteer status of the fire department.
Having determined that the fire department is a “volunteer” fire department, we must conclude that its firefighters are thus immune from liability for their negligent acts under the Volunteer Service Act. Because the firefighters are immune from liability for their negligent acts, the City is likewise immune from liability for the negligent acts of the firefighters. Hollis, supra. Further, because the City cannot be held liable for wanton or intentional conduct, it is likewise immune from suit for those claims asserted by the plaintiffs alleging wanton and/or intentional conduct by the City. § 11-47-190, Ala.Code 1975; Hollis, supra; and Walker v. City of Huntsville, 62 So.3d 474 (Ala.2010). Finally, the claims asserted against Mayor Labbe in his official capacity are simply claims asserted against the City. Dickinson v. City of Huntsville, 822 So.2d 411 (Ala.2001). Accordingly, Mayor Labbe enjoys the same protections from suit in this case as does the City.

Conclusion

The petitioners have established a clear legal right to the relief sought. Accordingly, we grant the petition for a writ of mandamus in this case and direct the trial court to enter a summary judgment for the petitioners.
PETITION GRANTED; WRIT ISSUED.
STUART, PARKER, SHAW, MAIN, WISE, and BRYAN, JJ., concur.
MURDOCK, J., concurs specially.
MOORE, C.J., dissents.

. The complaint asserts that the plaintiffs were the "caregivers” to and next of kin of the decedents.