[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 16-11309
Non-Argument Calendar

_____

D.C. Docket No. 5:13-cv-00895-CLS


ACADIA INSURANCE CO.,
as subrogee of Yedla Management Co., Inc., & Hospitality Enterprises of
Huntsville, Inc.,
d.b.a. Country Inn & Suites,

                                                         Plaintiff-Appellant,

                              versus

UNITED STATES OF AMERICA,

                                                         Defendant-Appellee.

_____

Appeal from the United States District Court
for the Northern District of Alabama

_____

(January 10, 2017)

Before MARCUS, JULIE CARNES and JILL PRYOR, Circuit Judges.

PER CURIAM:

In this case involving the Federal Tort Claims Act, 28 U.S.C. § 1346(b) ("FTCA"), Acadia Insurance Company ("Acadia") appeals the district court's grant of judgment in favor of the United States following a bench trial. In its complaint, Acadia sought to hold the United States vicariously liable, under the theory of respondeat superior, for the conduct of Special Agent Michael Siegling, of the Federal Bureau of Investigation ("FBI"). Acadia claimed that Special Agent Siegling had started a fire at the Country Inn and Suites in Huntsville, Alabama, when he negligently discarded smoking materials on the balcony outside his hotel room.[1] The agent had been staying at the hotel while attending a six-week training course paid for by the FBI.

In its order granting judgment in favor of the United States, the district court said it was "inclined to conclude" that Acadia established by a preponderance of the evidence that Special Agent Siegling negligently caused the fire. However, the court said it was not necessary to reach that question because, even if Siegling's negligent disposal of smoking materials caused the fire, the United States would not be vicariously liable for his conduct under Alabama law because Siegling was not acting within the scope of his employment while smoking after hours on his hotel room balcony. On appeal, Acadia argues that the district court misapplied

---

[1] Acadia had issued an insurance policy to the owners of the Country Inn and Suites, and, after the fire, paid the owners' insurance claim. Acadia sued as the owners' subrogee under the policy.

2

Alabama law to hold that Special Agent Siegling was not acting within the scope of his employment while smoking on the balcony. After careful review, we affirm.

After a bench trial, we review the district court's conclusions of law de novo and its factual findings for clear error. Tartell v. S. Fla. Sinus & Allergy Ctr., Inc., 790 F.3d 1253, 1257 (11th Cir. 2015). A district court's determination that an employee's actions were outside the scope of his employment is a mixed question of law and fact subject to de novo review. See Nadler v. Mann, 951 F.2d 301, 305 (11th Cir. 1992).

Under the FTCA, the United States is subject to liability in a tort action in the same manner and to the same extent that a private individual would be under the law of the place where the tort occurred. Daniels v. United States, 704 F.2d 587, 591 (11th Cir. 1983); 28 U.S.C. § 1346(b)(1). Thus, to determine liability under the FTCA, courts must look to the law of the state where the act or omission occurred. Daniels, 704 F.2d at 591. In this case, we look to Alabama law.

In Alabama, to recover against a defendant upon the theory of respondeat superior, "it is necessary for the plaintiff to establish the status of master and servant and that the act done was within the scope of the servant's employment." Solmica of Gulf Coast, Inc. v. Braggs, 232 So. 2d 638, 640 (Ala. 1970).

> The rule which has been approved for determining whether certain conduct of an employee is within the line and scope of his employment is substantially that if an employee is engaged to perform a certain service, whatever he does to that end, or in furtherance of the

3

employment, is deemed by law to be an act done within the scope of the employment.

Id. at 642 (quotation omitted).

To fall under the rule, the employee's conduct "must not be impelled by motives that are wholly personal, or to gratify his own feelings or resentment, but should be in promotion of the business of his employment." Id. at 642-43. "[W]hether an alleged wrong is committed by the employee during his regular working hours is not dispositive of the question whether the employee was acting within the scope of his employment. Instead, the dispositive question is whether the employee was engaged in an act that he was hired to perform or in conduct that conferred a benefit on his employer." Hulbert v. State Farm Mut. Auto. Ins. Co., 723 So. 2d 22, 24 (Ala. 1998) (citations omitted).

On this record, we cannot say that the district erred in concluding that Special Agent Siegling was not acting within the line and scope of his employment at the time of the fire. Evidence adduced at trial showed that at the relevant time, Siegling was smoking on his hotel room balcony, while he was off duty in the evening. At that time, his conduct was not being supervised by the FBI, nor was he engaging in activities that furthered its business. Rather, his smoking was impelled by purely personal motives. Indeed, the FBI did not pay for Special Agent Siegling's cigarettes, but instead prohibited him from purchasing cigarettes with his government credit card. Nor was he even required to stay at that

particular hotel.  In short, the record shows that at the time of the fire, Special Agent Siegling was not engaged in any action benefiting the FBI.

On appeal, Acadia argues that while the FBI may not have benefited directly from Special Agent Siegling's smoking, a smoke break is a minor detour from an employee's job duties, which does not take his conduct outside the scope of his employment under Alabama law.  Acadia cites Natco Corp. v. Mallory, 80 So. 2d 274 (Ala. 1955), in which the Alabama Supreme Court held that an employee injured when he went into the pit under his employer's conveyor belt to retrieve his fallen package of cigarettes was acting within the scope of his employment, as that term was defined in Alabama's workmen's compensation statute.

But Natco is distinguishable from the instant case in many ways.  For one, the standard for liability in the workmen's compensation context is not the same as that in the respondeat superior context under Alabama law.  See Ex parte Stewart, 518 So. 2d 118, 120 & n.2 (Ala. 1987) ("[W]e have . . . expressly rejected any one-to-one correspondence between compensation cases and the common law in the application of the law of master and servant, recognizing that compensation cases require a broader conception of the employer-employee relationship.").  Moreover, Natco involved an employee who was at his worksite, during his on-duty hours, and who was injured by his employer's machinery.  80 So. 2d at 274-75.  The employee was not smoking, but was instead retrieving cigarettes he had dropped

5

while he was working.  Id.  Here, in contrast, Special Agent Siegling was in a hotel room, after a training class had ended for the day, and he allegedly started a fire with cigarettes he had purchased for himself.

There is language in Natco indicating that a smoke break is a minor detour under Alabama law that does not take an employee's conduct outside the scope of his employment.  See id. at 275-76.  But the facts adduced at trial did not show that Special Agent Siegling was taking a smoke break on his hotel room balcony on the night of the fire.  Rather, Siegling testified that, during the six-week course, he typically left the hotel early in the morning, around 4:45 a.m., and returned around 4:00 or 5:00 p.m.  Siegling considered himself off-duty when at the hotel.  While he studied from time to time in his hotel room for exams held in the course, he did not testify that he was studying on the night the fire occurred, or that he was taking a break from studying when he went out onto his balcony to smoke that night.

These facts also distinguish this case from Hulbert.  There, the Alabama Supreme Court found a genuine issue of material fact concerning an employer's vicarious liability for a car accident caused by her nanny, who was driving to the employer's vacation home to help care for the employer's children.  723 So. 2d at 24.  In Hulbert, the nanny's driving to the employer's vacation home benefitted the employer, and one of the employer's children was in the car with the nanny at the time of the accident, which could have suggested the nanny was on duty.  See id.

6

See also Edgewater Motels, Inc. v. Gatzke, 277 N.W.2d 11, 16-17 (Minn. 1979) (upholding jury verdict finding employer vicariously liable for negligent conduct of employee whose cigarette smoking caused fire in hotel room, where employee was "24-hour-a-day man," used the hotel room as his "office away from home," and was reviewing expense reports when he started the fire).

Acadia further argues that Special Agent Siegling's smoking on his hotel room balcony was within the scope of his employment because the FBI reasonably could have expected that he would be smoking in his hotel room. In its appellate brief, Acadia asserts that the FBI "paid for [Siegling] to have a smoking room." But this is not supported by the trial evidence. While Agent Siegling testified that an ashtray was in his room, there was no evidence about whether the FBI specifically requested a smoking room for Siegling, or even whether the Country Inn and Suites distinguished between smoking and non-smoking rooms. On the other hand, Agent Siegling testified that, while the FBI paid for his lodging and meals and permitted him to use a government credit card for his expenses, it did not pay for his cigarettes and specifically prohibited him from purchasing cigarettes with the government credit card. Thus, if anything, the FBI discouraged Agent Siegling from smoking while he was on official government business.

Acadia also points to cases in which courts have held employers liable for car accidents caused by employees traveling on official business, who were driving

7

to or from restaurants to purchase meals paid for by the employer. Flohr v. Mackovjak, 84 F.3d 386, 390-92 (11th Cir. 1996) (applying California law to hold United States vicariously liable for car accident an Army engineer on temporary-duty assignment caused while driving to a restaurant in a rental car paid for by the government); Singleton v. Burchfield, 362 F. Supp. 2d 1291, 1293-95 (M.D. Ala. 2005) (applying Alabama law to hold United States vicariously liable for car accident an Air Force officer attending five-week training course caused while driving back to his hotel in a government car after eating dinner at a restaurant). Acadia says that since an employee's smoking confers just as much benefit on the employer as the employee's eating, the government should be held liable for Special Agent Siegling's negligent smoking activities.

We're unpersuaded. First of all, the cases Acadia cites involve employees who were driving vehicles that were either owned or rented by the employer, and Alabama law applies a presumption that an employee driving his employer's vehicle is acting within the scope of his employment. Pryor v. Brown & Root USA, Inc., 674 So. 2d 45, 48 (Ala. 1995). There is no such presumption for employees staying at hotels paid for by their employers. Secondly, whereas the government paid for the transportation and meals of the employees in Flohr and Singleton, the FBI did not pay for Special Agent Siegling's cigarettes, but instead prohibited him from purchasing cigarettes with his government credit card. As for

8

Acadia's reliance on Pryor for the proposition that an employer can be held vicariously liable even for conduct it prohibited, it is inapposite here. Pryor says that such liability may be imposed if the employee was acting within the line and scope of his employment. Id. at 47-48. But, as we've already explained, there is nothing to suggest that Special Agent Siegling was acting within the line and scope of his employment when he was smoking on his hotel room balcony at the time of the fire.

Acadia argues in passing that Special Agent Siegling's smoking may have been necessary for his optimal performance during the six-week training course, given the adverse symptoms addicted smokers typically experience when they go through nicotine withdrawal. However, Acadia presented no evidence to this effect at trial. Rather, Special Agent Siegling testified only that he smoked every day or every fourth day.

We also reject Acadia's claim that the district court erred by referencing cases from jurisdictions outside Alabama to decide if Siegling was acting within the scope of his employment while smoking after-hours on the hotel balcony. Acadia acknowledges that no Alabama case resolves whether an employer is vicariously liable for an employee's negligent cigarette smoking activities in his hotel room while the employee is traveling on official business. The district court did not err in looking to analogous cases from other jurisdictions to guide its

9

analysis as to whether Alabama courts would impose liability under the same circumstances.  The court expressly concluded that "the Alabama Supreme Court would follow the reasoning of cases from those jurisdictions."  (emphasis added).

Finally, Acadia argues that not holding the FBI liable for Agent Siegling's negligent cigarette-smoking activities does not comport with the policy reasons behind vicarious liability in Alabama.  We disagree.  In Hollis v. City of Brighton, the Alabama Supreme Court explained:

> Respondeat superior liability seems fully justified because (1) it tends to provide a spur toward accident prevention; (2) it tends to provide greater assurance of compensation for accident victims; and (3) at the same time it tends to provide reasonable assurance that, like other costs, accident losses will be broadly and equitably distributed among the beneficiaries of the enterprises that entail them.

885 So. 2d 135, 145 (Ala. 2004) (quotations omitted, alteration adopted).

We are not convinced that holding the FBI vicariously liable for a fire Special Agent Siegling allegedly caused while smoking on his hotel room balcony after hours, when he was not engaged in any activity that would benefit the FBI, would "spur toward accident prevention."  Again, it is relevant here that the FBI already discourages cigarette-smoking by agents traveling on official FBI business by prohibiting them from purchasing cigarettes with a government credit card.  Nor are we convinced that holding the FBI vicariously liable would equitably distribute losses among the beneficiaries of Special Agent Siegling's cigarette smoking, since there was no evidence the FBI benefitted from Siegling's smoking.

10

Instead, we agree with district court that holding the FBI vicariously liable on these facts risks holding employers liable for <u>any</u> acts done by employees while traveling on official business, which is contrary to Alabama law.  See <u>Solmica</u>, 232 So. 2d at 640.

    **AFFIRMED.**